Argued May 20, reversed and remanded June 28, 1974

MINNITI, *Petitioner, v.* EMPLOYMENT
DIVISION, *Respondent.*
**523 P2d 1060**

*Robert L. Ackerman,* Springfield, argued the cause
for petitioner. With him on the brief were Babcock,
Ackerman & Hanlon, Springfield.

*Al J. Laue,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

Before SCHWAB, Chief Judge, and LANGTRY and THORNTON, Judges.

LANGTRY, J.

Claimant appeals from an adverse ruling of the Oregon Employment Appeals Board on his claim for unemployment compensation in September 1973. His claim was denied because he was taking 16 hours of credit courses at the University of Oregon where he was in his junior year. The record which he made showed that he had worked full-time for Waremart during his first and second years at the same university, starting in 1970, in grocery and variety sections. He was laid off because of lack of work at Waremart, and testified that he had been actively seeking work elsewhere.

One term he was enrolled for 19 hours of credit, another 18 hours, another 16 hours, another 15 hours, and two summer terms 14 hours and 12 hours. All of this time he worked full-time for Waremart. One winter term he took no courses at all, and one spring term he took only three hours of credit. His testimony left the implication that the reason for not taking full courses these two terms was that it would have interfered with his work. The Division had the opportunity to, but did not, challenge any of this testimony except by cross-examination.

Claimant was asked:

"\* \* \* Was it that they [Waremart] were working around your schedule though?"

He answered:

"[A] No, I worked my classes around their schedule.

"[Q] Did you ever have to drop your classes for your employment?

"[A] Yes, I did."

His regular employment ended in June 1973 and then his last employment for Waremart before being again laid off was an eight-week period while he filled in for vacationing employes in August-September 1973. During the latter time he testified that he worked all hours —literally, sometimes at night on unloading crews and sometimes in the daytime as a clerk. When asked what he did if his work hours conflicted with his class schedule, his answer was, "Then I didn't make it to class \* \* \*."

■ The hearing officer and the Appeals Board considered this case had to reach the same result as in *Callaghan v. Morgan*, 9 Or App 116, 120, 496 P2d 55 (1972), wherein we said:

"\* \* \* [H]e who seeks to obtain unemployment compensation benefits while regularly attending school has a heavy burden to overcome—that regular attendance in school is in itself evidence of ineligibility \* \* \*."

We noted in *Callaghan* that the claimant there

"\* \* \* did not unequivocally testify that he was ready to drop school if necessary in order to accept any suitable work. On the contrary, he testified at one point he would be willing to give up school if it required him to work long hours; at another point, that he would give up school for a

*good job*; and at still another point, that he would accept employment during any hours *except* the hours during which he was going to school." (Emphasis theirs.) 9 Or App at 121-22.

In the case at bar the claimant testified much differently than did *Callaghan* as is indicated in the above quotations from his testimony. Also, claimant here had demonstrated by his past performance that he did make school secondary to suitable employment. In *Callaghan* the claimant had one day's work experience upon which he wished to gain unemployment compensation.

In *Callaghan* we discussed Annotation, 35 ALR3d 1129, 1154 (1971), which cites cases from seven jurisdictions in support of the statement that the claimant who is going full-time to school has a heavy burden of proof. Since that annotation was written, some courts have noted that while the burden upon the claimant is heavy it is not such that it cannot be overcome by facts like those we have here. For instance, *Couchman v. Industrial Commission,* — Colo App ——, 515 P2d 636 (1973), discusses a previous Colorado case, *Indust. Comm. v. Bennett,* 166 Colo 101, 441 P2d 648 (1968), which is one of those which is noted in the annotation. In *Couchman* the court said that in *Bennett:*

> "* * * The court did not rule that a full-time student, by attending classes during the normal working hours of the day, restricts his availability for employment. * * * [C]laimant's status as a student does not in itself make him unavailable for employment within the meaning of the statute * * *.
>
> "* * * * *
>
> "A determination of the availability for employment is one for which an all-inclusive rule cannot be stated, but rather must be made within the con-

text of the factual situation presented by each case
* * *." 515 P2d at 637.

The Colorado court remanded the *Couchman* case to the board for a full consideration of the facts. *See also Redmond v. Indust. Comm.,* 32 Colo App 134, 509 P2d 1277, *modified* — Colo ——, 514 P2d 623 (1973).

■ In *Callaghan* we noted that *Wiley Unempl. Compensation Case,* 195 Pa Super 256, 171 A2d 810 (1961), was one in which benefits were allowed although the claimant was attending college. The facts of *Wiley* are similar to those in the case at bar. In that respect we noted in *Callaghan:*

"* * * He had been attending college either full-time or part-time during the years of full-time employment, and continued to attend college when he filed his claim for benefits. There the court held that all of these facts, coupled with the uncontroverted testimony that claimant would accept any available work and would change class hours accordingly, or drop out of school entirely, was sufficient to qualify him for benefits." 9 Or App at 121.

Thus, we distinguished the facts of *Wiley,* which are similar to the facts in the case at bar, from those in *Callaghan* in arriving at our *Callaghan* decision. Since *Wiley* was decided another Pennsylvania court in *Patronas v. Unempl. Com. Bd. of Rev.,* 5 Pa Commw 491, 291 A2d 118 (1972), reached the same conclusion as that in *Wiley* upon a similar set of facts.

Inasmuch as the hearing officer and the Board orders in this case appear to have misconceived and misapplied the ruling in *Callaghan,* we conclude that those orders were arrived at erroneously.

Reversed and remanded.