Wiley Unemployment Compensation Case.

Argued April 13, 1961. Before ERVIN, WRIGHT, WOODSIDE, WATKINS, MONTGOMERY, and FLOOD, JJ. (RHODES, P. J., absent).

*Robert J. Wiley,* appellant, in propria persona.

*Sydney Reuben,* Assistant Attorney General, with him *Anne X. Alpern,* Attorney General, for Unemployment Compensation Board of Review, appellee.

OPINION BY WRIGHT, J., June 15, 1961:

Robert J. Wiley was last employed by the Sharon Steel Corporation, Farrell, Pennsylvania. His final day of work was May 27, 1960, on which date he had a valid separation. His application for benefits was disallowed by the Bureau of Employment Security, the Referee, and the Board of Review on the ground that he failed to meet the availability requirements of Section 401(d) of the Unemployment Compensation Law. Act of December 5, 1936, P. L. [1937] 2897, 43 P.S. 751 et seq. This appeal followed.

Appellant is presently twenty-eight years of age, resides in Sharon, Pennsylvania, and has a wife and two children. He had been continuously employed by the Westinghouse Electric Corporation from July 24, 1951, following his graduation from high school, until March 21, 1958, except for the period from June 2, 1953 to June 6, 1955, while he was in the military service. The separation from his employment with Westinghouse was due to a layoff because of lack of work. He commenced working for the Sharon Steel Corporation on February 24, 1959. After his layoff there, also because of lack of work, he sought employment at the General

American Transportation Company, at the Pennsylvania Power Company, and at the Sharon office of the Bureau of Employment Security, all without success.

The difficulty in this case arises because of the fact that appellant, during off hours, has been attending college at the University of Youngstown, Youngstown, Ohio. He is now in his senior year. He has been both in full-time employment and in either full or part-time college attendance during the same period. He stated before the Referee that he will accept any available work and will change his class hours accordingly or drop out of college entirely. His testimony on this point was as follows: "Q. Well, what about your availability at the present time? A. If I should get a day time job I would change my classes to night school; if that isn't sufficient I would just drop out of school because I have to have a job. Q. All right. I am coming to that now. You are way ahead of me. You have to have a job? A. Yes, I got to have a job first, that's all there is to it. I have a family to support. Q. All right, I will ask you then, would you quit school if you had to in order to take full time employment? A. Yes, sir, because I have been going to school and working since 1956 under the same conditions. I know I could have got transferred".

The record discloses that appellant was and is realistically and genuinely attached to the labor market. He does not fall into the category of an ordinary college student whose primary purpose is to obtain an education, and who is available for work only conditionally or on a limited basis.[1] Attendance at college

---

[1] *Rubin Unemployment Compensation Case*, 193 Pa. Superior Ct. 604, 165 A. 2d 101; *Majoris Unemployment Compensation Case*, 192 Pa. Superior Ct. 269, 162 A. 2d 86; *Gulbin Unemployment Compensation Case*, 191 Pa. Superior Ct. 646, 159 A. 2d 37; *Bates Unemployment Compensation Case*, 191 Pa. Superior Ct. 266, 156 A. 2d 589; *Collins Unemployment Compensation Case*, 191 Pa. Supe-

was not this appellant's primary purpose. His work record and his sincere efforts to obtain employment substantiate the fact that his chief responsibility is the support of his family. His conduct unquestionably meets the requirement of good faith. In the absence of proof that appellant refused suitable employment, he should not be denied benefits.

We were confronted with a similar situation in *Douty Unemployment Compensation Case*, 194 Pa. Superior Ct. 220, 166 A. 2d 65, wherein benefits were denied. To the extent that there is any inconsistency, the decision in the *Douty* case is overruled. As stated in the dissenting opinion in that case, a claimant "should not be penalized merely because he has the commendable desire, in keeping with the great American tradition, to further his education by attending classes during hours which do not interfere with his job".

Decision reversed.

———

CONCURRING OPINION BY WOODSIDE, J.:

Unemployment Compensation benefits were never intended to subsidize college students, and this Court has uniformly refused benefits to claimants attending school full time. I believe that under the Unemployment Compensation statute this Court must continue to refuse benefits to full time students who have been "working their way through college".

Although the line is fine between students who work and workingmen who study, I believe such a line must be drawn. I joined with the majority in refusing benefits to the student in Douty Unemployment Compensa-

rior Ct. 273, 156 A. 2d 593; *Lovich Unemployment Compensation Case*, 189 Pa. Superior Ct. 529, 151 A. 2d 647.

tion Case, 194 Pa. Superior Ct. 220, 166 A. 2d 65 (1960), because I was not satisfied that the claimant was actually attached to the labor market. Although the facts of these two cases are close, I think the claimant's evidence in this case establishes more clearly than the claimant's evidence in the Douty case, that he was a workingman going to college and not a college student working. A claimant with a long employment record, who has a family requiring his support and who is required by necessity to leave school to continue employment if the two conflict, and whose bona fide effort to obtain any full time employment available is beyond question, should not be denied benefits. Whether or not the Douty case was correctly decided, I am satisfied that the claimant in this case is attached to the labor market and is entitled to benefits.

MONTGOMERY, J., joins in this concurring opinion.

---

DISSENTING OPINION BY ERVIN, J.:

I am compelled to dissent from the majority opinion in this case because I am firmly convinced that the unemployment compensation fund was never intended to be used to underwrite college educations.

It is commendable that this young man, who is now in his senior year, should want to complete his college education. It should be entirely possible for him to obtain funds from some other source for this very worthy purpose. Great inroads have been made in recent years upon the unemployment compensation fund and it has been necessary to increase the payments made by employers to keep the fund solvent.

This Court up to now has held the line against many assaults upon the fund to use it as an underwriting agency for college educations. Within the last year the

entire membership of the Court, with one exception, voted upon a case which, in my judgment, controls this case. See *Douty Unemployment Compensation Case,* 194 Pa. Superior Ct. 220, 166 A. 2d 65 (allocatur refused by Supreme Court February 27, 1961). There, as here, the claimant stated that he could shift the time of his classes to meet any change in work schedules. We said: "It hardly seems likely that any college or university would permit a student to alternate successively from day to night classes and night to day classes to conform to a rotating shift, if such a job is offered to him."

In the *Douty* case the record also discloses that the claimant was prepared to accept any full time job, whether day or night and whatever the hours; further that, should such employment entirely prevent his attendance at classes, he stood ready and willing to forego his education for that period of time. Nevertheless we denied compensation. We did so, I think, because we were convinced that notwithstanding what the claimant said, his real and primary purpose was to get an education. He was not unconditionally attached to the labor market.

I predict that if we once break this rule, before long the fund will be used to finance great numbers of college educations. Certainly government should furnish the means for this very worthy purpose from some other source and the unemployment compensation fund should be preserved for its original purpose.

I would affirm the decision of the board.

Watkins, J., joins in this dissent.