GLENN H. HANSEN v. CONTINENTAL CAN
COMPANY.
DEPARTMENT OF MANPOWER SERVICES,
RESPONDENT.

221 N. W. 2d 670.

September 13, 1974—No. 44595.

*James H. Manahan,* for relator.

*Warren Spannaus,* Attorney General, *Jon Morgan,* Solicitor General, *Peter C. Andrews,* Assistant Attorney General, and *Gary C. Reiter,* Special Assistant Attorney General, for respondent.

PER CURIAM.

Certiorari to review a decision of the commissioner of manpower services. The report of the commissioner found the relator ineligible for unemployment benefits because he was not "available for work" within the meaning of Minn. St. 1971, § 268.08, subd. 1(3). We reverse.

The essence of this appeal is whether § 268.08, subd. 1(3), was properly interpreted and correctly applied to the facts. Minn. St. 1971, § 268.08, subd. 1(3), provides:

"An individual shall be eligible to receive benefits with respect to any week of unemployment only if the commissioner finds that:

\* \* \* \* \*

"(3) He was able to work and was available for work, and was actively seeking work, provided that individual's weekly benefit amount shall be reduced one-fifth for each day such individual is unable to work or unavailable for work; provided further that benefits after December 31, 1971, shall not be denied by application of this clause to an individual who is in training with the approval of the commissioner."

Relator was employed by Continental Can Company as a minster operator. Relator worked the second shift from 4 p. m. to 12:30 a. m. He worked 40 hours per week and received about $4.16 per hour. Relator was involuntarily laid off September 22, 1972.

Late in September 1972, he began his senior year at Mankato State College. He was seeking a Bachelor of Science degree in elementary education. At no time during this final year of educa-

tion were his classes scheduled past 12 noon. Consequently, he was able to be a full-time employee at Continental Can and a full time student at Mankato State College.

In late November 1972, relator made a claim for unemployment benefits, starting with the week of October 22, 1972. The representative of the commissioner decided that relator, by attending college during part of the customary working hours, had restricted the terms and conditions under which he would accept employment and was not unequivocally attached to the labor force. Accordingly, the representative of the commissioner determined that relator was not "available for work."

Relator testified that he informed the employment office of his willingness to quit school to secure employment. He said:

"* * * I would quit school. I told them that at the employment office when I first made a claim."

Relator was reemployed by Continential Can on February 5, 1973, and again worked the second shift while attending college.

With the exception that the representative of the commissioner determined he was not "available for work," relator met all other eligibility conditions prerequisite to receiving unemployment benefits.

Minn. St. 1971, § 268.08, subd. 1(3), does not require a claimant to remain idle. Attending college does not by definition make a claimant unavailable for work. A claimant must be "accessible or attainable for work when suitable work is offered at such hours as are customary in the type of employment to which he is suited." He must be "genuinely attached to the labor market." Olson v. Starkey, 259 Minn. 364, 371, 107 N. W. 2d 386, 391 (1961). A claimant "may not limit [his] availability because of personal or domestic reasons unrelated to [his] employment." Thompson v. Schraiber, 253 Minn. 46, 48, 90 N. W. 2d 915, 916 (1958). The claimant should be interested, willing, and ready to accept available employment. Olson v. Starkey, *supra*. But the statute does not restrict the claimant from pursuing his interests

while unemployed. A claimant may further his education while unemployed and still receive benefits so long as he meets the statutory requirements for eligibility and the tests for availability.

Relator in the instant case meets all these tests of availability. He placed no conditions or restraints on his availability. He offered to quit school or switch shifts in order to secure employment. At no time did he limit his accessibility or reject employment. No evidence was presented to show a lack of interest in work or an unwillingness to work. All the evidence demonstrated his availability for work.

We limit this holding to the facts of the instant case, where the relator expressed his willingness to accept employment at any time and even to quit school to do so. Those involuntarily unemployed still must actively seek employment, not place conditions or restrictions on their availability, and be a genuine part of the labor force. We do not hold in any way that a student may refuse daytime employment and collect benefits merely because he customarily worked the night shift. Even if the student meets the initial statutory tests for eligibility, he still must remain eligible. The statute does not contemplate enforced idleness, only availability. We therefore reverse.

Reversed.