Argued April 21, affirmed May 12, 1975

MINNITI, *Petitioner, v.* EMPLOYMENT DIVISION,
*Respondent.*

535 P2d 99

*Tom Hanlon,* Springfield, argued the cause for petitioner. On the brief were Babcock, Ackerman & Hanlon and Robert L. Ackerman, Springfield.

*Alvin Alexanderson,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

Before SCHWAB, Chief Judge, and LANGTRY and THORNTON, Judges.

LANGTRY, J.

Claimant appeals from a final order of the Employment Appeals Board denying him unemployment compensation benefits for the period of September 29, 1974 through October 26, 1974. Adopting the decision of its designated referee the Board found claimant to be ineligible for benefits because he was not "available for work, and * * * actively seeking and unable to obtain suitable work * * *" as required under ORS 657.155(1)(c).

Asserting that the ultimate conclusion of the Board is unsupported "by reliable, probative and substantial evidence in the whole record * * *,"[1] claimant suggests that our decision in a prior case involving the "identical controversy"—*Minniti v. Employment*

---

[1] "Judicial review of decisions under ORS 657.275 shall be as provided for review of orders in contested cases in ORS 183.310 to 183.500 * * *." ORS 657.282.

"* * * The court shall reverse or remand the order only if it finds:

"* * * * *

"(d) On review of a contested case, the order is not supported by reliable, probative and substantial evidence in the whole record * * *." ORS 183.480(7)(d).

*Division,* 18 Or App 44, 523 P2d 1060 (1974)—requires reversal of the order.

In affirming a decision of the Board denying benefits to a student attending Lane Community College, this court noted in *Callaghan v. Morgan,* 9 Or App 116, 496 P2d 55 (1972), that one seeking to secure unemployment compensation while attending school has a "heavy burden" to overcome, pointing out "that regular attendance in school is in itself evidence of ineligibility * * *." 9 Or App at 120. Mr. Minniti was subsequently denied benefits in September 1973 while attending the University of Oregon, the Board erroneously interpreting our ruling in *Callaghan* as making regular attendance at an educational institution *conclusive* evidence of ineligibility. On appeal, while reiterating that an individual's status as a student creates a substantial burden to be overcome in establishing eligibility under ORS 657.155, we clarified our earlier opinion by explicitly ruling that unequivocal testimony indicating a willingness on the part of a claimant to forego educational opportunities *together with* additional facts demonstrating that his education is "secondary" to employment might serve to meet that burden. The Board's order was then reversed and remanded for a further determination of whether claimant was entitled to benefits.[2]

We did not, however, by our former opinion—as claimant here contends—decide that an unequivocal statement of an intent to compromise one's educational interests in order to obtain employment would —in and of itself—be sufficient to overcome the bur-

[2] Upon remand Mr. Minniti was found to be eligible for benefits and was paid the same throughout the 1973-1974 academic year while remaining a student· at the University of Oregon. The Board apparently found his own testimony credible· in light of his employment history up to the time benefits were sought in September 1973.

den imposed upon a student seeking unemployment benefits. As we noted in our previous opinion, citing *Couchman v. Indust. Comm.,* 33 Colo App 116, 515 P2d 636 (1973):

" '* * * * *

" 'A determination of the availability for employment is one for which an all-inclusive rule cannot be stated, but rather must be made within the context of the factual situation presented by each case * * *.' 515 P2d at 637." 18 Or App at 47-48.

■ The question before us in this case is therefore singular—does a review of the entire record disclose "any facts from which the conclusion drawn by the Board could be reached by reasonable minds * * *."[3] In other words, does this record contain relevant evidence which a reasonable mind might find adequate to support the conclusion that claimant was not, in fact, available for work and actively seeking suitable work during those weeks for which unemployment benefits were sought and denied despite his own testimony that he would drop school to accommodate his work schedule even if it meant postponement of graduation?

■ Claimant acknowledges the following findings of fact made by the referee to be "correct," i.e., to be based upon evidence in the record:

"Claimant worked for the employer on three occasions: from October, [1971] until June, 1973; from August 8, 1973 until September 21, 1973; and from August 15, 1974 until August 25, 1974. He worked for the employer as a grocery checker, produce clerk, and on the freight crew. * * * Claimant is seeking grocer work *and* work in the accounting profession. He is seeking work in the Eugene, Springfield area * * *.

[3] Bay v. State Board of Education, 233 Or 601, 605, 378 P2d 558, 96 ALR2d 529 (1963).

"Claimant has taken a withdrawal card from the Eugene Retail Clerks local union. He has not contacted that union since sometime in 1973. Claimant does not submit job applications to prospective employers, believing that most employers in the retail grocery business hire on the spot, and do not utilize applications. Claimant made three job contacts in each of the weeks in issue * * *.

"Claimant is currently a full time student at the University of Oregon taking 16 credit hours fall term, 1974 (September 30, 1974 to about December 15, 1974). He is an academic senior and needs 12 additional credit hours in order to graduate with a B.S. degree in Business Administration. His prospective graduation date is at the completion of winter term in March, 1975. Claimant has invested about $2,500 in his education to date. Claimant has been financing his education from student loans, from past earnings, and from unemployment insurance benefits used to pay his personal expenses. Claimant has sufficient funds available to complete school.

"During the weeks in issue claimant attended classes from 9:30 a.m. to 10:20 a.m., Mondays, Wednesdays and Fridays, and between the hours of 8:00 a.m. and 4:45 p.m., Tuesdays and Thursdays. When claimant was a regular employe of the employer he did not enroll in classes winter term, 1973, and took only three credit hours spring term, 1973 because the school would conflict with his work. Since June, 1973, claimant's work and school overlapped only on August 8, 9 and 10, 1973. However, he was working on the night crew for the employer, and there was no conflict between school and work."[4] (Emphasis supplied.)

---

[4] Between June 1973 and October 1974 claimant had been employed for less than nine weeks; all but three days of that employment had been during the summer months during times when he was enrolled in no classes at the University.

We are satisfied that these facts might lead one to reasonably conclude, as did the Board, that "claimant [is] not unequivocally attached to the labor market. He is primarily interested in obtaining his educational objectives, now near at hand." When it had arrived at this conclusion, based on the evidence, claimant had failed to carry his burden.

Affirmed.