609 P.2d 660

**Dennis R. MAEZ, SSA 519 68 3101, Claimant-Appellant,**

v.

**THUNDERBIRD MARKET, Employer-Respondent,**

and

**Department of Employment, Defendant-Respondent.**

No. 13108.

Supreme Court of Idaho.

April 17, 1980.

Maez began working for employer-respondent Thunderbird Market in September, 1977. He was hired as a journeyman clerk, and his duties included checking, handling freight, and making displays. He was absent from work on November 10 and 12, 1977, due to an illness and returned to work on November 14, 1977.

On November 15, 1977, Maez began work by bagging groceries for customers. His manager then told him to start working on freight that was at the back of the store. Maez did so, but was called back a number of times by other clerks to bag groceries. Each time the manager saw him bagging groceries, he would send him back to work on the freight. Apparently, Maez and his manager were quite upset with each other at this point. After ordering Maez to work on the freight for about the third time, the manager followed him to the back of the store and asked him if he had brought a doctor's statement for the days he had been absent. The two men started arguing over whether a doctor's statement was required. During the course of this argument, the manager told Maez, "if you're not gonna get a doctor's excuse and you're gettin' tired of this job anyway, you know where the time clock's at." Maez interpreted that statement to mean that he was fired. He immediately clocked out and left the store.

Maez filed for unemployment insurance benefits in December, 1977. The Department of Employment, an Appeals Examiner, and the Industrial Commission all denied his claim. Maez appeals that denial.

On an appeal from the Industrial Commission, we are constitutionally limited to a review of questions of law. Idaho Constitution, Art. 5, § 9. We will, therefore, not disturb the findings of the Commission that are supported by substantial and competent evidence. *Guillard v. Department of Employment*, 100 Idaho 647, 603 P.2d 981 (1979); *Hoyt v. Morrison-Knudsen Co., Inc.*, 100 Idaho 659, 603 P.2d 993 (1979). Our review of the record, however, shows that the Commission's decision to deny benefits to Maez was based on a finding not supported by substantial and competent evidence.

Roderick D. Gere of Idaho Legal Aid Services, Inc., Boise, for claimant-appellant.

David H. Leroy, Atty. Gen., R. LaVar Marsh, Roger B. Madsen, Deputy Attys. Gen., Boise, for respondent Dept. of Employment.

SCOGGIN, Justice Pro Tem.

This case involves a claim for unemployment insurance benefits under the Idaho Employment Security Law. The claimant-appellant, Dennis Maez, appeals from a decision by the Industrial Commission denying his claim for unemployment benefits.

The Appeals Examiner found that "when the claimant refused to get one [doctor's statement], the manager told him that if he did not supply a doctor's statement, he could not work." The Appeals Examiner further found that "the manager needed the doctor's statement requested to determine if the claimant was entitled to sick-pay. Therefore, the request for the doctor's statement is determined to be a reasonable request." The Appeals Examiner then concluded that Maez's leaving work after refusing to comply with the reasonable request constituted a voluntary quit without good cause. The Industrial Commission affirmed that decision on the single ground enunciated by the Appeals Examiner: that Maez voluntarily quit work without good cause by failing to comply with a reasonable request.

It is clear from the record and findings of the tribunals below that Maez was not required to bring in a doctor's excuse. The Commission found that Maez had only been absent from work for two days due to illness. The union contract governing the employees at Thunderbird Market stated that a doctor's statement would be required before sick-pay would be granted, but that no sick-pay would be allowed for the first two days of any illness.[1] Maez was only absent for two days and, therefore, could not have drawn sick-pay even with a doctor's statement. Moreover, there was no evidence that the manager was enforcing one of his own rules in requiring the doctor's statement; indeed, the manager's testimony indicated that he demanded the doctor's statement because he felt it was required by the union contract.[2]

Thus, the record reveals no employment rule requiring Maez to produce a doctor's statement to his manager. By forcing Maez to make a choice between giving up his job or bringing a doctor's statement, the manager was certainly not making a rea-

1. Article XI, entitled *Sick Leave*, reads in pertinent part:
   "11.1 *Employees shall be granted six (6) days of Sick Leave with pay in any one contract year. Sick leave shall accumulate at the rate of one-half day per month. The first two (2) days of any illness for which a Doctor is consulted will not be compensated for; the succeeding five days during the initial seven (7) day period of illness shall be paid for if sufficient time has been accumulated. Starting the eighth day the Health and Welfare Plan Time Loss payments will apply. 11.3 Sick Leave Bank: Sick leave allowance shall be used only for a bona fide illness of any employee as determined by a Doctor. Any unused Sick Leave shall be accumulated into a Sick Leave bank of not more than twenty (20) days, said bank to be used for the future illness of an employee as his needs may require.*"

2. Smith's testimony in full was as follows:
   "Q. Now, let's go back to Exhibit 7, and prior to the hearing, you marked a passage on page 7 of this document.
   A. Yeah, well, it just to bring—it's just a basic sick leave in our contract. It's not a . . . nothing too outlandish there. It says they should be granted six days sick leave, with pay, in any one contract here and they accumulate a half a day per month. Now there has to be a certain amount of days before they can get this here, which I first . . . when she called for the second day, I had to ask for a doctor's excuse and he'd

been workin for the time so he woulda got a little prorated sick pay coming . . . he worked two months, he might of not got a full—his full time comin' just workin' there two months but it was a good possibility he could a got some prorated sick time comin'.
   Q. Now, as I—
   A. Which we have to turn in, it's my responsibility to get this stuff turned in.
   Q. As I understand it, the union contract does not actually require a statement from the doctor for this, is that—isn't that true, I haven't read this passage right here, does it actually say you have to do this only on . . .

   A. Once a doctor is consulted . . . and we have—the store itself, has to pay the sick pay and we won't pay it without a doctor or physician's statement.
   Q. That's part of your in-house management process . . .
   A. Yes.
   Q. . . . to see that the money is paid for what it's supposed to be paid for.
   A. Well, we're just not gonna have somebody takin' off work without . . . they'd draw on their sick pay when they weren't sick, that's not fair, you know, 'cause we are bound here by this contract. The store has signed this contract and they employee . . . they agree to work within this contract and the employees also, when they join the union, agree to work within this contact and . . . ."

sonable request. The Industrial Commission, in affirming the Appeals Examiner, based its decision solely on the ground that the manager had made a reasonable request which was not complied with. Thus, the Industrial Commission's finding is not supported by substantial and competent evidence. We find that a reasonable person would consider the circumstances resulting in Maez's unemployment to be real, substantial, and compelling. *See, e. g., Meyer v. Skyline Mobile Homes,* 99 Idaho 754, 589 P.2d 89 (1979); *Flynn v. Amfac Foods, Inc.,* 97 Idaho 768, 554 P.2d 946 (1976). Therefore, Maez did not voluntarily quit work without good cause, and the Industrial Commission's decision is reversed. Costs and attorney fees to appellant.

DONALDSON, C. J., McFADDEN and BISTLINE, JJ., and DUNLAP, J. Pro Tem., concur.