650 P.2d 634

**Alice B. DAVENPORT,
Claimant-Appellant,**

v.

**STATE of Idaho, DEPARTMENT OF EMPLOYMENT,
Defendant-Respondent.**

**No. 13736.**

Supreme Court of Idaho.

Aug. 23, 1982.

Eugene A. Marano, Coeur d'Alene, for claimant-appellant.

David H. Leroy, Atty. Gen., Emma R. Thomas, Deputy Atty. Gen., Boise, for defendant-respondent.

SHEPARD, Justice.

This is an appeal from an order of the Industrial Commission which denied unemployment compensation benefits. We reverse.

Claimant-appellant Davenport is a woman of middle age who has worked as a waitress and occasionally a factory worker for 20 years. In the fall of 1979 she was working at two part-time jobs, one at the Tortilla Factory in Post Falls three mornings a week for a total of twelve hours a week, and one as a waitress at a Pizza Hut in Coeur d'Alene where her hours varied from ten to forty hours per week. She enrolled at North Idaho College, where her classes were from noon until 3:00 p. m. on Mondays, Wednesdays, and Fridays, and from 7:00 to 10:00 p. m. on Monday evenings. On December 16, 1979, without fault on her part, she lost her job at the Pizza Hut.

Davenport filed for unemployment compensation benefits and her request was first denied because her class schedule made her "unavailable for work", but upon a redetermination she was granted benefits for the period of December 16, 1979, to January 13, 1980, since classes were not in session during that time. Thereafter her benefits were terminated as of January 13 when she started second semester classes. Her second semester class schedule was the same as the first, and she continued to work at the Tortilla Factory.

It is agreed that Davenport has satisfied the Department's requirements for seeking work. She has not refused to interview for jobs nor has she rejected any job offer because a job might interfere with her school work. In interviews with prospective employers, she did not tell them of her school schedule nor that she held a part time job at the Tortilla Factory. When asked if tendered employment would have to fit into her class schedule, she answered:

"Well, yes and no. If I can find a job, I can drop the classes. It's not set in concrete that I go to college. I'm simply trying to better myself to get a better job and I won't be in this position again. It would be nice if I could find hours that work around them."

At another point she stated:

"I'm not sure that I would [drop out of college], but I haven't found a job to test whether I would or not."

In her request for review, she stated:

"[M]y attendance is not set in concrete. I'm not making any money attending college and college will still be there even if I have to drop out now and continue later."

Davenport testified that her school schedule was chosen because lunch waitresses are generally hired because they are women with children in school, and that Mondays are the slowest nights on the evening shift. That evidence is not controverted, nor does the Department argue it is erroneous. Davenport's claim was denied by an examiner who found she was primarily interested in looking for work that would not conflict with her class schedule, and that for Davenport to be "fully available" for her primary work as a waitress, she must be available *around the clock*. On appeal the Industrial Commission affirmed that decision, holding that Davenport's "attendance at school during hours when waitress *or* factory work is normally performed constitutes a restriction on her availability for suitable full-time work . . ." (Emphasis added).

The sole question on this appeal is whether Davenport's college attendance rendered her unavailable for work and, therefore, ineligible for unemployment compensation benefits. Upon appeal from the Industrial Commission, although this Court traditionally defers to Commission findings, we have stated that where the evidence is undisputed, the findings will be reviewed and if clearly unsupported, will be overturned. *Ledesma v. Bergeson,* 99 Idaho 555, 585

P.2d 965 (1978); *Hix v. Potlatch Forests, Inc.,* 88 Idaho 155, 397 P.2d 237 (1964); *Laird v. State Highway Dept.,* 80 Idaho 12, 323 P.2d 1079 (1958). Although those decisions related to workmen's compensation, the scope of review of unemployment compensation is identical under Article 5, § 9 of the Idaho Constitution. *Idaho Mut. Benefit Ass'n v. Robison,* 65 Idaho 793, 154 P.2d 156 (1944). *See Maez v. Thunderbird Market,* 101 Idaho 128, 609 P.2d 660 (1980) (Commission's finding that claimant voluntarily quit work reversed).

The Department of Employment evidently concedes that in a case of this nature: "[T]he language of I.C. § 72–1312(a) permits receipt of benefits by an otherwise eligible claimant whose enrollment in school does not affect the claimant's availability for suitable full time employment." *Smith v. Department of Employment,* 100 Idaho 520, 523, 602 P.2d 18, 21 (1979).

■ The Employment Security Act was enacted to alleviate the hardships of involuntary unemployment and will be construed liberally to effectuate that purpose. *Smith v. Department of Employment, supra; In re Potlatch Forests, Inc.,* 72 Idaho 291, 240 P.2d 242 (1952). As Justice Cardozo noted, in *Chas. C. Steward Mach. Co. v. Davis,* 301 U.S. 548, 593, 57 S.Ct. 883, 893, 81 L.Ed. 1279 (1937), "[a]n unemployment law framed in such a way that the unemployed who look to it will be deprived of reasonable protection is one in name and nothing more." It is clearly the intent of the legislation that benefits be granted or denied based upon matters of substance rather than mere form, and the act will be construed to effectuate that intent.

■ The decision below and the position of the Department here is that a claimant working in an occupation which may offer work at any time, day or night, is *ipso facto* unavailable if the claimant attends school at any time. We do not agree. Availability is not such a rigid concept, but rather it must be based on the facts and circumstances of each individual case. *Couchman v. Industrial Comm'n,* 33 Colo.App. 116, 515

P.2d 636 (1973); *Petro v. Employment Division, Dept. of Human Resources,* 32 Or.App. 17, 573 P.2d 1250 (1978); *Texas Employment Comm'n v. Hays,* 360 S.W.2d 525 (Tex. 1962).

The essence of the Department's position in these matters is that the purpose of the Employment Security Act was to relieve the disaster of unemployment among those who make up the work force of our society. It further argues that college students should, as a class, be denied unemployment benefits; otherwise there will be an opening of the floodgates for claims with resulting dire fiscal consequences, effectively allowing college students to gain an education at public expense. While we agree in part with the Department's assertions, we disagree that all persons having an attachment to the work force and work market, but also some attachment to education, are *ipso facto* disenfranchised from the obtention of benefits.

■ The general rule appears to be that student-claimants who are held eligible for unemployment benefits are those who place availability for work ahead of their schooling and demonstrate a willingness to change class schedules or drop out of school if job conflict makes such necessary. *Morgan v. Unemployment Ins. App. Board,* 416 A.2d 1227 (Del.Super.1980); *Goodman v. Minnesota Dept. of Employment Services,* 255 N.W.2d 222 (Minn.1977); *Hansen v. Continental Can Co.,* 301 Minn. 185, 221 N.W.2d 670 (1974); *Golden v. Industrial Comm'n, Div. of Employment Security,* 524 S.W.2d 34 (Mo.App.1975); *Evjen v. Employment Division,* 22 Or.App. 372, 539 P.2d 662 (1975); *Wiley v. Unemployment Compensation Board of Review,* 195 Pa.Super. 256, 171 A.2d 810 (1961); *Reardon v. Unemployment Compensation Board of Review,* 30 Pa.Cmwlth. 139, 373 A.2d 146 (1977). The demonstrated inquiry is whether the claimant is genuinely attached to the labor market or principally interested in obtaining an education. *Wiley, supra,* is generally regarded as the leading case. Claimant there was a 28-year old steel worker who had been employed full-time for nearly ten

years and who had attended school during that same period. He was in his senior year of college, supported a family, and stated his willingness to quit school to get a job. His application for benefits was denied, but the court held on appeal that he was sufficiently attached to the labor market, that he was not an ordinary college student whose primary desire was to obtain an education, and benefits were awarded. *See also Lipchak v. Commonwealth Unemployment Compensation Board of Review,* 34 Pa.Cmwlth. 451, 383 A.2d 970 (1978); *Reardon, supra; Unemployment Compensation Board of Review v. Siene,* 24 Pa.Cmwlth. 430, 357 A.2d 228 (1976). On the other hand, it was held in *Golden, supra,* that claimant who was a full-time college student and expressed no willingness to adjust his class hours or forgo his education, was not entitled to benefits. *See also Townsend v. Kansas Employment Security Board of Review,* 218 Kan. 306, 543 P.2d 888 (1975); and *Texas Employment Comm'n v. Hays,* 360 S.W.2d 525 (Tex.1962).

■ The Department here asserts that Davenport has not demonstrated her attachment to the work force. We disagree and find it difficult to postulate how a person could be more attached to the work force than Davenport. The relevant and totally undisputed facts reveal that Davenport has worked as a waitress and factory worker for 20 years. At the time of her job termination, she was working two jobs, varying from 22 to 52 hours each week. She did not indicate to potential employers that she was attending classes, and on at least two occasions stated her willingness to quit school or drop conflicting classes if necessary. Throughout all this time, she continued work at the Tortilla Factory. Although the record is not totally clear, it appears that Davenport was actively seeking and eventually obtained another job. There is no indication in the record that Davenport had any other means of support except her employment. As before noted, she met all Department requirements for seeking work.

■ The Department places large emphasis on Davenport's statement that she wanted an education so she would not be faced with the vagaries of the unskilled marketplace. The Department thereby in essence argues that a desire to better oneself while still working nevertheless divorces one from the work force. We disagree. As stated in *Wiley v. Unemployment Compensation Board of Review, supra,*

> "[A] claimant 'should not be penalized merely because he has the commendable desire, in keeping with the great American tradition, to further his education by attending classes during hours which do not interfere with his job'." 171 A.2d at 812.

As stated by the Minnesota Court in *Hansen v. Continental Can Co.,* 301 Minn. 185, 221 N.W.2d 670, 672 (1974), "[t]he statute does not contemplate enforced idleness, only availability."

We conclude, therefore, that the Commission's conclusions, (albeit stated as findings) regarding claimant's nonavailability [the test laid down by this Court in *Smith v. Department of Employment,* 100 Idaho 520, 602 P.2d 18 (1979)], are not supported by the record here, and the order of the Commission is reversed. We conclude that Davenport has carried her burden of proving her availability and she is entitled to unemployment compensation benefits for that time she was unemployed following her termination of employment in December, 1979.

We do not hold that any claimant, stating that he will forgo his education to return to work, will automatically receive benefits. *See e.g., Minniti v. Employment Division,* 21 Or.App. 356, 535 P.2d 99 (1975). As stated, determinations will rest on a case-by-case basis with guidelines indicated in the opinions of courts reviewing awards and denial of awards.

The order of the Commission is reversed, with costs and attorneys' fees to appellant. *Maez v. Thunderbird Market,* 101 Idaho 128, 609 P.2d 660 (1980); *Kerr v. Department of Employment,* 97 Idaho 385, 545 P.2d 473 (1976).

McFADDEN, BISTLINE and DONALDSON, JJ., concur.

**496**

BAKES, Chief Justice, dissenting:

I would heartily join in the majority opinion if we were the Industrial Commission and the trier of fact in this case. Since we are not, however, the decision of the Industrial Commission should be affirmed because there is substantial evidence to support the commission's finding. Accordingly, I dissent.

The majority identifies the sole issue on appeal as "whether Davenport's college attendance rendered her unavailable for work and, therefore, ineligible for unemployment compensation benefits," and further states that the "demonstrated inquiry is whether the claimant is genuinely attached to the labor market or principally interested in obtaining an education." These are clearly factual questions to be determined by the trier of fact, the Industrial Commission.

The majority ignores its encroachment into the province of the Industrial Commission by stating that "[u]pon appeal from the Industrial Commission ... this Court *traditionally* defers to Commission findings ...." (Emphasis added.) What the majority regards as "traditional deference" to commission findings is constitutionally mandated and reinforced by statute. *See* Idaho Const.Art. 5, § 9; I.C. § 72–724 and –732. In reviewing commission findings, we have long recognized that this Court has authority to reverse a commission decision only "when its findings are unsupported by any substantial and competent evidence, I.C. § 72–732(1) or are not supportable as a matter of law, Idaho Const.Art. 5, § 9." *Gordon v. West,* 103 Idaho 100, 103, 645 P.2d 334, 337 (1982), *citing Curtis v. Shoshone County Sheriff's Office,* 102 Idaho 300, 303, 629 P.2d 696, 699 (1981). The record contains evidence that supports the commission's findings and, exercising the restraint imposed on our review of those findings by the Idaho Constitution and statutes, I would affirm.