690 P.2d 911

**Jack E. GOOLSBY, Claimant-Appellant,**

v.

**LIFE SAVERS, INC., Employer-Respondent,**

**and**

**State of Idaho, Department of Employment, Respondent.**

**No. 15182.**

Supreme Court of Idaho.

Oct. 31, 1984.

Andrew M. Harrington, of Anderson, Kaufman, Ringert & Clark, Boise, for employer-respondent Life Savers, Inc.

DONALDSON, Chief Justice.

This is an appeal from the Industrial Commission which found that claimant Jack E. Goolsby's unemployment was the result of a discharge for employment-related misconduct. The record discloses the following history of employment of the claimant with Life Savers, Inc. Claimant Goolsby was employed by Life Savers, Inc. as a sales representative from 1958 to November 13, 1981. During that entire time, claimant operated out of his Boise residence. His sales territory extended from Ontario, Oregon to Twin Falls, Idaho, and from Wells, Nevada to McCall, Idaho.

Claimant had been the subject of corrective action reports in 1978 or 1979. A corrective action is a procedure to up-grade the performance of a sales representative. Claimant again became the subject of corrective action in 1981. On March 19, 1981, claimant received a three-page memorandum, which outlined problems with his job performance. On that date, he had a discussion with his supervisor about the problems and he was given 30 days to improve his performance. Contained within the memorandum was the following statement:

> "6. I expect eight hours of productive work from you ... five days a week! This must include a MINIMUM of 10 calls per day. Again, I will stress, if there is any reason you cannot work a full day during any particular work day, I require a phone call to my office with that information. If you must deviate from your planned call schedule, the same applies. If you can't reach anyone at my office, you must make contact with the Division Office during that day with the information. The Division Office will, in turn, notify me." *See* Exhibit 15.

On June 12, 1981, the claimant was again the subject of corrective action. A memorandum of June 12, 1981, reiterated, among other items, the need for the claimant to work eight hours a day, five days a week

Howard Ray Foley, of Foley & Lance, Chartered, Meridian, for claimant-appellant.

Jim Jones, Atty. Gen., Lynn E. Thomas, Sol. Gen., Larry F. Weeks, Deputy Atty. Gen., Boise, for respondent Dept. of Employment.

and the need for the claimant to call either the District or Division Office if he was unable to work a full day during any particular day. The June memorandum noted specific days when the claimant did not work a full day. The claimant was also informed that if substantial improvements were not achieved and maintained, further steps would be taken, which would include the possibility of discharge.

On September 9, 1981, the claimant was removed from corrective action status. The document which informed the claimant of his removal from corrective action status also indicated that the claimant would be subject to termination if his performance returned to an unsatisfactory level.

On November 12th and 13th, 1981, claimant's district manager out of Salt Lake City, and claimant's division manager out of Denver, were in Boise. When they had made the arrangements for the trip, the division manager suggested that since the district manager was scheduled to arrive prior to him, that the district manager drive by the claimant's house and see if he had left for work. On November 12th the district manager drove by claimant's house at 9:45 a.m. He observed that claimant had not yet begun his daily calls. Later that same afternoon, both the district manager and the division manager drove by claimant's house and found claimant's car in his driveway at 4:30 p.m.

On November 13th, the division manager parked outside claimant's home and waited to observe when claimant left for his first call. When claimant had not yet left by 10:00 a.m., the division manager went to the front door of claimant's home and was admitted by claimant's wife. He observed that the claimant was sitting at the dining room table, dressed for work, and working on some personal business.

The division manager asked claimant why he had not yet left for work. The claimant responded that he had been taking medication prescribed by a physician which caused him to sweat. The division manager then asked claimant to accompany him to a local restaurant. Upon arriving at the restaurant, the division manager telephoned both the district and division office to find out if the claimant had called in ill. He was told that the claimant had called the division office that morning and requested some information, but did not inform the secretary that he would be starting work late that day. The division manager then fired the claimant.

Subsequently, claimant applied for unemployment benefits through the Department of Employment and was granted such benefits on December 3, 1981. Life Savers petitioned for a re-determination which resulted in an affirmance of claimant's entitlement to benefits. Life Savers appealed, and after a hearing on the matter, the Department of Employment's appeals examiner concluded that claimant was not discharged for misconduct and, therefore, was entitled to unemployment benefits. Life Savers then appealed to the Industrial Commission. The matter was assigned to a referee, and after three days of hearings, the referee concluded that claimant was ineligible for unemployment benefits because he had been discharged for misconduct in connection with his employment. The Industrial Commission thereafter adopted and affirmed the referee's findings and conclusions. Claimant then moved for reconsideration. After consideration of the arguments contained in the claimant's motion for reconsideration, the Commission adhered to its original decision and denied the claimant's motion for reconsideration. This appeal followed.

 The applicable provision of the Employment Security Law is I.C. § 72–1366(e), which states in pertinent part:

"The personal eligibility conditions of a benefit claimant are that—

. . . .

'(e) His unemployment is not due to the fact that he left his employment voluntarily without good cause, or that he was discharged for misconduct in connection with his employment.' "

This Court has defined "discharged for misconduct" as follows: "wilful, intentional

disregard of the employer's interest; a deliberate violation of the employer's rules; or a disregard of standards of behavior which the employer has a right to expect of his employees." *Johns v. S.H. Kress & Co.*, 78 Idaho 544, 548, 307 P.2d 217, 219 (1957). The test for misconduct in standard-of-behavior cases is (1) whether the employee's conduct fell below the standard of behavior expected by the employer; and (2) whether the employer's expectation was objectively reasonable in the particular case. *Matthews v. Bucyrus-Erie Co.*, 101 Idaho 657, 659, 619 P.2d 1110, 1112 (1980). The determination of whether a claimant disregarded the standards of behavior which the employer has a right to expect from its employees is a factual one. *Watts v. Employment Security Agency*, 80 Idaho 529, 335 P.2d 533 (1959); *Cornwell v. Kootenai County Sheriff*, 106 Idaho 823, 683 P.2d 859 (1984). Factual findings reached by the Commission will not be overturned by this Court if they are supported by substantial and competent evidence. *Cornwell v. Kootenai County Sheriff, supra* at 825, 683 P.2d at 861; *Parker v. St. Maries Plywood*, 101 Idaho 415, 614 P.2d 955 (1980); *Jenkins v. Agri-Lines Corp.*, 100 Idaho 549, 602 P.2d 47 (1979).

■ In this case, the record supports the finding that the claimant had disregarded the standard of behavior which Life Savers expected of him. The claimant had been warned that the employer had certain expectations of him, and that if he failed to meet those expectations, he would be subject to discharge. There is substantial and competent evidence to support the finding that the employer's policies and rules were known to claimant and were objectively reasonable. The claimant's refusal to adhere to the known employer policies was behavior which was inconsistent with the type of conduct which the employer had a right to expect. Thus, claimant's discharge resulted from his own misconduct. Consequently, claimant is not entitled to unemployment benefits.

The decision of the Industrial Commission is affirmed.

Costs on appeal to respondent.

No attorney fees on appeal.

SHEPARD, BAKES and HUNTLEY, JJ., concur.

BISTLINE, Justice dissenting.

The legal conclusions of the Industrial Commission are not substantiated by the findings of fact nor the record. Thus, I would remand to the Commission for further consideration.

### I.

The Commission states that Mr. Goolsby was fired because of misconduct and cites two reasons: (1) that he had not left for work in time to be at his first appointment by 8:00 a.m.; and (2) that he had failed to notify his superiors that he was ill. Both reasons ignore uncontested, uncontradicted, and non-conflicting evidence before the Commission.[1]

First, on the days in question in which Mr. Goolsby was allegedly home in violation of company policy—November 12 and 13, 1981—Mr. Goolsby's normal routine and sales procedure had been cancelled. On those two days, Mr. Goolsby's sales

---

1. In *Pierstorff v. Gray's Auto Shop*, 58 Idaho 438, 74 P.2d 171 (1937), this Court held:

The rule applicable to all witnesses, whether parties or interested in the event of an action, is, that either a board, court, or jury must accept as true the positive, uncontradicted testimony of a credible witness, unless his testimony is inherently improbable, or rendered so by facts and circumstances disclosed at the hearing or trial. (*Manley v. Harvey Lumber Co.*, 175 Minn. 489, 221 N.W. 913, 914 [1928].) In *Jeffrey v. Trouse*, 100 Mont. 538, 50 Pac.(2d) 872, 874 [1935], it is held that neither the trial court nor a jury may arbitrarily or capriciously disregard the testimony of witness unimpeached by any of the modes known to the law, if such testimony does not exceed probability. And, in *Arundel v. Turk*, 16 Cal.App.(2d) 293, 60 Pac.(2d) 486, 487, 488 [1936], the rule is stated thus: "Testimony which is inherently improbable may be disregarded, but to warrant such action there must exist either a physical impossibility of the evidence being true, or its falsity must be apparent, without any resort to inferences or deductions."

The holding of *Pierstorff* has been consistently applied by this Court, as recently as in *Dinneen v. Finch*, 100 Idaho 620, 603 P.2d 575 (1979).

district was involved in a sales "blitz." During this "blitz" no regular 8:00 to 5:00 work schedule was in place. Rather, Mr. Goolsby and the other sales persons were instructed to work only on retail and wholesale accounts. Accordingly, since the 8:00 to 5:00 rule was not in effect, the fact that Mr. Goolsby was at his home after 8:00 a.m. on the days in question does not rise to the level of intentional or willful disregard of the employer's interests. Nor can this be construed as a deliberate violation of the employer's rules.

Second, Mr. Goolsby did not call his employer to inform him that he was sick or otherwise unable to do his work because he did not consider himself sick. Mr. Goolsby considered himself only delayed in beginning his work day. He asserted that he had intended to put in a full day in accomplishing the objectives of the sales "blitz" as soon as the sweating ended.

The facts demonstrate that Mr. Goolsby was not dismissed during a normal work week. Furthermore, the employer failed to show that Mr. Goolsby would not work an eight-hour day on the days in question, nor that he could not accomplish the directive of the sales "blitz" campaign. The Commission's decision is apparently based upon the assumption that the days in question were ordinary work days and that Mr. Goolsby was required to call the company if he needed to deviate from the normal, pre-set planned work schedule. Since these assumptions are incorrect, any reliance upon them results in a decision unsubstantiated in the record. Accordingly, I would reverse the Commission's decision.

## II.

The procedural history of this case highlights the inadequacy of Idaho's process for determining unemployment questions. Mr. Goolsby's claim was allowed three times by various appeals examiners in the Department of Employment. It was not until seventeen months after the last appeal within the Department of Employment, and twenty months from when Mr.

Goolsby first was awarded unemployment benefits, that the Commission entered the picture refinding the facts and redetermining Mr. Goolsby's claim. It is now over one year since the Commission rendered its decision and 35 months since Mr. Goolsby found himself among the unemployed.

I.C. § 72–1368 outlines the appellate procedure for unemployment claims. In essence, it provides for five successive levels a claimant must endure in pursuing an unemployment claim. First, a claims examiner makes an ex parte determination whether a claimant is eligible for benefits. That decision can be appealed by a disgruntled party's request for redetermination. The claims examiner then reviews the case, refinds the facts, and issues a decision. That decision can be appealed to an appeals examiner who not only reviews evidence already presented but can hear new evidence in affirming, modifying, or reversing the claims examiner's decision. That decision can then be appealed to the Industrial Commission. The Commission can also elect to hear new evidence and make its own findings of fact. Finally, that decision can be appealed to this Court.[2] Unlike the other appeals stages, this Court will not hear new evidence and issue its own findings of fact, but is not bound by the conclusions reached during the lower levels.

I seriously wonder as to the value received, if any, in prolonging these claims by involving the Commission and in turn this Court. The Commission, undoubtedly pressed to the utmost in attending to the work for which it was created, i.e., industrial injury and occupational disease cases, is now content to make most of its unemployment decisions on the cold record sent up to it by the Department of Employment— or at best utilizes a cold record tailored for it by one of its referees—certainly a procedure which was not a general practice in earlier days. *Booth v. City of Burley*, 99 Idaho 229, 580 P.2d 75 (1978), emasculated any meaningful involvement on the part of this Court. Hence, I see little in these two final stages which enhances the purposes

---

**2.** It is interesting to note that in the neighboring state of Washington appeals such as this are made to the superior court. *See* Wash.Rev.Code

§ 50.32.120 (1984 Supp.), where judicial review is governed by the Administrative Procedure Act.

of the Act, providing nothing, in fact, except delay and increased legal expenses. Where a claimant is denied benefits, but ultimately prevails, it is to be much doubted that he still has the need for the benefits which the law wanted to be his on becoming unemployed.

There is no additional or supplemental expertise that members of the Commission have that the Department of Employment appeals examiners do not have which would justify keeping the Commission in the act. Contrary to what is true in industrial injury cases, the expertise of the Commissioners is no factor at all in its function as a review board in unemployment cases. There is no present justification for not accepting the final Department of Employment determination as final, and taking only pure questions of law first to a district court, and ultimately to this Court. Idaho's present system has become archaic in today's world, not serving the purpose of the law. *See Jenkins v. Agri-Lines Corp.,* 100 Idaho 549, 553, 602 P.2d 47, 50 (Bistline, J., dissenting, with Donaldson, C.J., concurring therein). As Justice Shepard wrote for four members of the Court in *Davenport v. State, Department of Employment,* 103 Idaho 492, 494, 650 P.2d 634, 636 (1982):

> The Employment Security Act was enacted to alleviate the hardships of involuntary unemployment and will be construed liberally to effectuate that purpose. *Smith v. Department of Employment* [100 Idaho 520, 602 P.2d 18 (1979)], *supra: In re Potlatch Forests, Inc.,* 72 Idaho 291, 240 P.2d 242 (1952). As Justice Cardozo noted, in *Chas. C. Steward Mach. Co. v. Davis,* 301 U.S. 548, 593, 57 S.Ct. 883, 893, 81 L.Ed. 1279 (1937), "[a]n unemployment law framed in such a way that the unemployed who look to it will be deprived of reasonable protection is one in name and nothing more." It is clearly the intent of the legislation that benefits be granted or denied based upon matters of substance rather than mere form, and the act will be construed to effectuate that intent.

The incongruence of this case is highlighted by two facts. First, Mr. Goolsby prevailed three times at the various Department of Employment appeals levels, losing only before the Commission, which based its decision on facts that the three previous examiners did not find. Second, Mr. Goolsby had been doing a good job for Life Savers when he was discharged. In fact, shortly before his discharge, his employer had seen fit to add a substantial increase to his salary, and in a rating evaluation just one week prior to his discharge, Mr. Goolsby was rated "good" to "very good" in every area of selling evaluated by his supervisor. Furthering this confusion, in this Court we have the two respondents, Life Savers and the Department of Employment, disagreeing with each other—the Department siding with Mr. Goolsby. What this all adds up to is three years of appeals, delays, and expenses, and a decision not based on the record. I cannot subscribe to such a result.