917 P.2d 750

In the Matter of Kris J. Cserepes, Claimant.

Michael BRANCHFLOWER, Employer, Plaintiff–Appellant,

v.

STATE of Idaho, DEPARTMENT OF EMPLOYMENT, Defendant–Respondent.

No. 21820.

Supreme Court of Idaho, Boise, February 1996 Term.

May 23, 1996.

Stephan, Kvanvig, Greenwood, Stone & Trainor, Twin Falls, for appellant.

Alan G. Lance, Attorney General; Paul F. Kime, Deputy Attorney General, Boise, for respondent.

SILAK, Justice.

This is an unemployment insurance tax coverage case. Appellant Michael Branchflower (Branchflower) appeals a decision and order of the Industrial Commission (Commission) that certain workers employed by Branchflower to install, maintain and repair irrigation systems were in covered employment for unemployment insurance purposes, and that Branchflower was not exempt from coverage for agricultural labor pursuant to I.C. § 72–1304 for the services of his workers. We affirm.

## I.

### FACTS AND PROCEDURAL BACKGROUND

Branchflower has been a sole proprietor since 1985. His business is installing, main-taining and repairing "center pivot" irrigation systems. The center pivot irrigation system is a type that is used exclusively on farms for crop irrigation purposes. Branchflower provides these services on a contract basis to farmers and irrigation companies. He has a crew of workers that usually ranges from two to three people in addition to himself. Branchflower and his employees work exclusively on farms, and they work both on the farm owned by Branchflower and other farms. Branchflower has never employed more than ten people nor paid wages in excess of $20,000 during any calendar quarter, although his payroll has exceeded $300 in a calendar quarter.

On November 10, 1992, claimant Kris J. Cserepes (Cserepes) filed a claim for unemployment insurance benefits with the respondent State of Idaho Department of Employment (the Department). Cserepes reported on his claim that he had worked for Branchflower from January through April 1992. He worked in the construction of center pivots, and during the first quarter of 1992 was paid wages in the amount of $1,898, and in the second quarter was paid $527.

Because Branchflower had not reported wages earned by Cserepes, the Department initiated an investigation of the employment relationship to determine whether it constituted covered employment for unemployment insurance purposes. On March 15, 1993, the Department issued a status determination that held Branchflower liable as a covered employer for the services of his workers, including Cserepes, and that the services of Branchflower's workers were not exempt agricultural labor pursuant to I.C. § 72–1304.

Branchflower protested this determination to the Department's Appeals Bureau. After an evidentiary hearing, the appeals examiner issued a decision reversing the Department's status determination, ruling that Branchflower's workers did not perform services in covered employment because the services were exempt agricultural labor.

The Department thereafter appealed to the Commission which reversed the decision of the appeals examiner, and ruled that with respect to work done on farms other than Branchflower's farm, the services of Branch-

flower's workers were performed in covered employment because they did not meet the criteria for exemption as agricultural labor. With respect to services performed on Branchflower's own farm, the Commission found these to be exempt because they met the requirement of I.C. § 72–1304(a)(2) that the services be performed "[i]n the employ of the owner or tenant or other operator" of the farm. Branchflower appeals.

## II.

### ISSUES ON APPEAL

1. Whether the Commission erred in concluding that the services performed by Branchflower do not fall within the definition of "agricultural labor" as set forth in I.C. § 72–1304(a)(1).

2. Whether Branchflower is entitled to attorney's fees on appeal under I.C. § 12–117 and I.A.R. 41.

## III.

**THE COMMISSION CORRECTLY CONCLUDED THAT THE SERVICES PERFORMED BY BRANCHFLOWER DO NOT FALL WITHIN THE DEFINITION OF "AGRICULTURAL LABOR" PURSUANT TO I.C. § 72–1304(a)(1).**

■ This Court's review of decisions of the Commission is limited to questions of law. Idaho Const. art. V, § 9; *Welch v. Cowles Publishing Co.*, 127 Idaho 361, 363, 900 P.2d 1372, 1374 (1995). In deferring to the Commission's role as the fact finder, the Court has held that it will decline to substitute findings of fact contrary to those of the Commission where substantial and competent evidence in the record supports those findings. *Spruell v. Allied Meadows Corp.*, 117 Idaho 277, 279, 787 P.2d 263, 265 (1990). In the present case, Branchflower does not dispute the appeals examiner's findings of fact nor those of the Commission. Thus, the Court need only review whether the Commission correctly applied the law to those facts.

I.C. § 72–1315(a) defines the term "covered employer" as follows:

Any person who, in any calendar quarter in either the current or preceding calendar year paid for services in covered employment wages of three hundred dollars ($300) or more . . .

I.C. § 72–1315(e) provides for a less inclusive definition of "covered employer" in the case of "agricultural labor," limiting "covered employer" to one who:

(1) During any calendar quarter in the calendar year or the preceding calendar year paid wages in cash of twenty thousand dollars ($20,000) or more for agricultural labor, or

(2) On each of some twenty (20) days during the calendar year or during the preceding calendar year, each day being in a different calendar week, employed at least 10 (ten) individuals in employment in agricultural labor for some portion of the day.

■ In the present case, Branchflower meets the general definition of "covered employer" under I.C. § 72–1315(a), having paid wages of more than $300 in a calendar quarter in the preceding calendar year. Branchflower argues, however, that the services his employees perform are "agricultural labor" which merits the application of the less inclusive "covered employer" definition contained within I.C. § 72–1315(e). If the services performed by Branchflower's employees do constitute "agricultural labor", then Branchflower would not be a "covered employer" since he has not employed more than ten people or paid wages in excess of $20,000 during any calendar quarter of the year in question, 1992. Thus, the controlling inquiry in determining whether Branchflower is a "covered employer" is whether the services performed by his workers were "agricultural labor" pursuant to I.C. § 72–1304(a).

I.C. § 72–1304(a) provides in pertinent part:

(a) The term "agricultural labor" includes all services performed:

(1) On a farm, in the employ of any person in connection with cultivating the soil, or in connection with raising or harvesting any agricultural or horticultural commodities, including the raising, shearing, feeding, caring for, training, and management of livestock, bees, poultry, and furbearing animals and wildlife.

(2) In the employ of the owner or tenant or other operator of a farm in connection with the operation, management, conservation, improvement, or maintenance of such farm and its tools and equipment, or in salvaging timber or clearing land of brush and other debris left by a hurricane if the major part of such service is performed on a farm.

Branchflower argues that the activity of assembling a piece of equipment on a farm, which equipment is physically attached to the farm and which can only be used on a farm and only for the irrigation of crops on that farm, falls within the exemption of subsection (a)(1) of I.C. § 72–1304 because it is "in connection with cultivating the soil" or "in connection with" raising crops. In support of his argument, Branchflower relies on the early case of *Big Wood Canal Co. v. Unemployment Comp. Div.*, 61 Idaho 247, 100 P.2d 49 (1940). In that case the Court stated:

> Irrigating the land is as much "agricultural labor" as is the plowing, grading, and cultivating the land after it is cleared of the sagebrush and greasewood.

*Id.* at 252, 100 P.2d at 50. We find Branchflower's argument to be without merit.

Branchflower's business consisted of the assembly and repair of agricultural sprinkler systems. Branchflower did not repair irrigation pumps or tower motors associated with the center pivots, and the assembly and repair never entailed hooking one up to a system and actually setting the irrigation system in motion. Nor did he oversee the system's operation once it was up and running. In fact, but for the unwieldy size of the equipment in question, the assembly of the irrigation system could have been done anywhere and is therefore more aptly described as the final step in the manufacturing process of a complex piece of farm machinery.

Moreover, contrary to Branchflower's assertion, *Big Wood Canal Co. v. Unemployment Comp. Div., supra*, is not dispositive of this case for several reasons. First, *Big Wood Canal Co.* is distinguishable from the present case because there was no statutory definition of "agricultural labor" at the time that case was decided. I.C. § 72–1304(a)

now enumerates several distinct categories of agricultural labor, one of which, subsection (a)(3), specifically addresses labor performed for non-profit irrigation associations, the type of labor at issue in *Big Wood Canal Co.* Second, *Big Wood Canal Co.* dealt with the construction and maintenance of general irrigation systems by a mutual non-profit corporation whose function was to maintain and operate a reservoir and ditch system for the distribution of water for domestic and irrigation purposes to approximately nine hundred members. *Id.* at 249, 100 P.2d at 49. In the case at bar, we are concerned with a for-profit business consisting of highly specialized structural assembly and repair of complex pieces of farm machinery on an individual basis. Further, it is undisputed that Branchflower's employees did not irrigate a single acre of farm land. Thus, we hold that the "agricultural labor" exemption found in I.C. § 72–1303(a)(1) concerning "cultivating the soil" or "raising or harvesting any agricultural or horticultural commodities," is inapplicable to Branchflower's business. Branchflower's work was not a service rendered in a process or step "taken and necessary to the production of a finished farm product." *Florek v. Sparks Flying Serv., Inc.*, 83 Idaho 160, 164, 359 P.2d 511, 513 (1961).

■ Branchflower argues that the agricultural exemption statute, I.C. § 72–1304, specifically subsections (a)(1) and (a)(2), should be construed broadly when the Court determines whether the employment is exempt from unemployment insurance tax coverage. In effect, Branchflower asks the Court to place the burden of disproving an exemption from coverage on the Department. However, this Court has held that the burden of establishing an exemption from unemployment insurance tax coverage is on the employer in cases involving the agricultural labor exemption. *Henggeler Packing Co., Inc. v. Dep't of Employment*, 96 Idaho 392, 395, 529 P.2d 1264, 1267 (1974). *See also, Appeal of Evangelical Lutheran Good Samaritan Society*, 119 Idaho 126, 129, 804 P.2d 299, 302 (1990) ("The burden is on the claimant taxpayer to clearly establish a right of exemption ..."). Idaho's Employment Security

Law is remedial social legislation designed to alleviate "the hardships resulting from involuntary unemployment." *Johns v. S.H. Kress & Co.*, 78 Idaho 544, 547, 307 P.2d 217, 219 (1957). This Court has held that the law should be construed liberally to effect its remedial social purpose. *Davenport v. Dep't of Employment*, 103 Idaho 492, 494, 650 P.2d 634, 636 (1982). However, when the Court construes taxing statutes and most remedial legislation, exemptions from coverage should be narrowly construed. *King v. Dep't of Employment*, 110 Idaho 312, 313, 715 P.2d 982, 983 (1986). In the present case, the Commission correctly narrowly construed the agricultural labor exemption statute, I.C. § 72–1304.

We further hold that I.C. § 72–1304(a)(2) is applicable to services performed on Branchflower's farm. Subsection (a)(2) includes within the purview of "agricultural labor," services performed "in connection with the operation, management, conservation, improvement, or maintenance of such farm and its tools and equipment . . ." Without question, the assembly and repair of center pivot irrigation systems constitutes services in connection with the improvement and maintenance of a farm's equipment. However, I.C. § 72–1304(a)(2) also requires that such services be performed "[i]n the employ of the owner or tenant or other operator" of the farm. Since only some of the services at issue were performed on Branchflower's own farm for Branchflower, the Commission correctly ruled that only the services performed on Branchflower's own farm were "agricultural labor" as defined by I.C. § 72–1304(a)(2). With respect to services performed on other farms, which includes the work done by Cserepes, the "agricultural labor" exemption of I.C. § 72–1304(a)(2) does not apply.

In sum, we hold that the services performed on Branchflower's own farm for Branchflower were "agricultural labor" and that under I.C. § 72–1315(e), he is not a covered employer with respect to those services. However, the services performed on farms other than Branchflower's were not "agricultural labor," and therefore, Branchflower is a covered employer as to those services pursuant to I.C. § 72–1315(a).

## IV.

## CONCLUSION

We hold that Branchflower is not entitled to utilize the "agricultural labor" exemption of I.C. § 72–1304(a)(1) because, in construing the statute narrowly, Branchflower's business of assembly and repair of agricultural sprinkler systems does not constitute "cultivating soil" or "raising or harvesting any agricultural or horticultural commodities."

We further hold that while the services rendered by Branchflower's business fall within the definition of "agricultural labor" under I.C. § 72–1304(a)(2) with respect to the work done on Branchflower's own farm, the work performed by Branchflower's employees, including Cserepes, on other farms, does not meet the "agricultural labor" definition. Thus, with respect to those services, Branchflower is a covered employer and Cserepes is entitled to received unemployment insurance benefits.

Accordingly, the decision of the Commission is affirmed.

No attorney fees on appeal. Costs on appeal to respondent.

McDEVITT, C.J., and JOHNSON, TROUT and SCHROEDER, JJ., concur.