# BRUCE G. OLSON v. FRANK T. STARKEY, COMMISSIONER OF EMPLOYMENT SECURITY.

107 N. W. (2d) 386.

February 3, 1961—No. 38,105.

*Rainer L. Weis,* for relator.

*Walter F. Mondale,* Attorney General, and *Joseph A. Coduti,* Assistant Attorney General, for respondent.

NELSON, JUSTICE.

Writ of certiorari to review a decision of the Department of Employment Security issued upon the relation of Bruce G. Olson.

Relator, a high school graduate, age 26, single, was discharged from the United States Army on November 25, 1958, whereupon he went to live with his parents on a farm near Belgrade, Minnesota. He had received some training as a radio repairman but had no actual experience in that field of work. He had driven a jeep, mainly. On December 9, 1958, relator filed an initial claim for benefits under the provisions of the Ex-Servicemen's Unemployment Compensation Act of 1958[1] at the office of the Department of Employment Security at

---

[1] 42 USCA, § 1371, pocket part pp. 176, 177, amends Title XV of the Social Security Act to extend the unemployment insurance system to ex-servicemen. By reason of an agreement between Minnesota Department of Employment Security and the Secretary of Labor, United States Department of Labor, the Department of Employment Security is the agent of the United States for the purpose of making payment of unemployment compensation under Title XV. Section II of the agreement provides that the Minnesota Department of Employment Security will pay compensation under Title XV to individuals entitled thereto in the same amounts, on the same terms, and subject to the same conditions as com-

St. Cloud, Minnesota. He was then told of a job opening in assembly work at the Franklin Mfg. Co. He refused to consider a referral for such work, indicating that he did not think it offered an opportunity to get ahead.

The Department of Employment Security on December 11, 1958, on the basis of military wage credits reported to it by the appropriate Federal agency in the amount of $2,928 determined relator's claim valid for a maximum amount of $962 payable to him during the benefit year at the weekly rate of $37 if he remained unemployed and otherwise eligible. Relator thereafter filed continued claims for unemployment compensation benefits stating that he was unemployed but able and available for work. He was accordingly paid benefits in the sum of $777 at the rate of $37 per week for the period beginning December 9, 1958, and ending May 11, 1959.

The manager of the St. Cloud state employment office on May 29, 1959, by telephone, made another referral to relator of assembly-line work at $1.67 per hour with the Franklin Mfg. Co. Relator stated that he was not interested in that work. He expressed interest in a sales position with a hardware concern on another occasion, but it does not appear from the evidence that he sought employment of that nature. Because of relator's lack of interest in seeking employment, the manager of the St. Cloud employment office wrote him a letter informing him that benefits for the weeks ending May 18 and 25, 1959, were being suspended until they had an interview. An interview was later arranged for June 3, 1959, at which relator signed a statement which reads as follows:

"I live on my parents farm (206 acres) about 4 miles SW of Belgrade. 50 head of cattle. Family consists of my mother, my father (66 years old) and my brother (29) and myself. I have been driving tractor, caring for stock, I do just as much work as my brother or father. I turned down the offer of a job at Franklin Mg. Co. in St.

pensation which would be payable to such individuals under the state unemployment compensation law if such individuals' Federal service and Federal wages had been included as employment and wages under such law.

Cloud because I don't like that kind of work (assembly). I haven't made any effort to find work since I filed my claim."

On July 7, 1959, after a second interview, relator signed an additional statement which reads as follows:

"I was working on the farm about 8 hours per day—did chores am & pm & field work—received only board and room for this—no money."

On July 22, 1959, the supervisor of the investigation unit of the Department of Employment Security, pursuant to Minn. St. 268.18, subd. 1, issued a determination stating in part:

"IT IS HEREBY DETERMINED that you have received benefits to which you are not lawfully entitled by reason of error and have thus been overpaid in the amount of $777.00.

"THEREFORE, in accordance with the above mentioned provision of Minnesota Statute, you are hereby notified to make full refundment of this overpayment within a period of 20 days from date of this notice."

Relator duly appealed from said determination. After due notice, a hearing was held on this appeal at St. Cloud before the chairman of an appeal tribunal of the department. His findings stated in part:

"DECISION: IT IS CONSIDERED AND DETERMINED That for the period beginning December 9, 1958, and ending May 11, 1959, both dates inclusive, claimant was not available for work and is, therefore, ineligible for benefits for said period.

"IT IS FURTHER CONSIDERED AND DETERMINED That claimant received unemployment benefits in the sum of $777.00 for the weeks ending December 15, 22, 29, 1958; January 5, 12, 19, 26; February 2, 9, 16, 23; March 2, 9, 16, 23, 30; April 6, 13, 20, 27; May 4, 11, 1959, to which he was not entitled because he was not available for work during said period; resulting in an overpayment of benefits to him in the sum of $777.00; and that claimant must make refundment of the amount of $777.00 in accordance with the provisions of the Minnesota Employment Security Law.

"The determination of the supervisor of the Investigation Section of the said Department * * * is affirmed."

Relator appealed from this decision to the commissioner of the Department of Employment Security. Thereafter, upon due notice relator appeared in person before a representative of the commissioner who issued the following decision:

"IT IS ORDERED That the findings of fact and decision of the appeal tribunal * * * be and they hereby are approved and adopted as the findings of fact and decision of the Commissioner herein, and the decision of said tribunal in said matter is hereby affirmed."

Relator appeals on the ground that the record does not justify a holding that he was not available for work during the period in question, contending that he did not perform service for an employing unit within the meaning of the Minnesota Employment Security Act, and also on the ground that the proceedings denied him due process.

Minn. St. 268.03 is a legislative declaration of public policy providing in part:

"As a guide to the interpretation and application of sections 268.03 to 268.24, the public policy of this state is declared to be as follows: Economic insecurity due to unemployment is a serious menace to the health, morals, and welfare of the people of this state. Involuntary unemployment is therefore a subject of general interest and concern which requires appropriate action by the legislature to prevent its spread and to lighten its burdens. * * * The legislature, therefore, declares that in its considered judgment the public good and the general welfare of the citizens of this state will be promoted by providing, under the police powers of the state for the compulsory setting aside of unemployment reserves to be used for the benefit of persons unemployed through no fault of their own."

Section 268.08, subd. 1, provides in part:

"An individual shall be eligible to receive benefits with respect to any week of unemployment only if the commissioner finds that:

* * * * *

"(3) He was able to work and was available for work, * * *."

Section 268.04, subd. 23, provides:

" 'Unemployment'—An individual shall be deemed 'unemployed' *in any week during which he performs no service and with respect to which no wages are payable to him,* or in any week of less than full time work if the wages payable to him with respect to such week are less than his weekly benefit amount. The commissioner may, in his discretion, prescribe regulations relating to the payment of benefits to such unemployed individuals." (Italics supplied.)

State of Minnesota, Department of Employment Security, Regulation 20, August 20, 1945, provides:

"(c) No individual shall be deemed to be unemployed in any week in which he

"1. Devotes his full time to the performance of services for an employing unit or is engaged in self-employment regardless of the amount of remuneration paid or payable or earned by him for such services;

* * * * *

"(d) 'Full-time' as used in this regulation shall mean the number of hours in the calendar week during which individuals engaged in the same or similar occupations in the same establishment usually or customarily perform such services, except that any week during which an individual worked forty or more hours shall be deemed to be full-time employment."[2]

---

[2]The Department of Employment Security's Local Office Claims Manual, used as a guide in the administration of the provisions of the Minnesota employment security law, contains the following:

"1040 Eligibility.

"An individual who has filed a valid new claim shall be eligible to receive credit for any week only if he meets the following eligibility conditions.

* * * * *

"1044 Able to Work. The claimant must be able to perform some type of work for which he is reasonably suited by experience and training. * * *

* * * * *

"1045 Available for Work. The claimant must be ready and willing

While relator contends that services performed by him on his father's farm were not services for an employing unit, because none exists on his father's farm, the record shows that relator's father did from time to time employ individuals, particularly in connection with corn picking and silo filling.

In New Jersey full-time work in excluded employment bars a worker from benefits. 6 CCH, Unemployment Ins. Rep. (N. J.) par. 1901. Also see, Minn. App. Trib. Dec. No. 4-TUC-UCOP-59, Dec. 14, 1959, in which case a claimant who was employed on a full-time basis operating a small grocery store and filling station for his father 40 or more hours per week, for board and room, was held not unemployed and, therefore, unavailable for work and ineligible for benefits under Minn. St. 268.08, subd. 1(3).

A claimant who lived and worked on his father's 85-acre farm, which was well stocked and had over 15 acres under cultivation, was held to be self-employed. All the work on the farm was done by claimant and his brother. See, W. Va. App. Trib. Dec. No. AT-814, Nov. 3, 1939, 9 CCH, Unemployment Ins. Rep. (W. Va.) par. 1901.-047; Tex. Dec. of App. Exr. No. 947-AT-40, July 5, 1940, Unemployment Comp. Interpretation Service, Benefit Series, U.C.I.S., Vol. 4, No. 9, p. 245 (case No. 6484); Wash. App. Trib. Dec. No. A-17952, March 31, 1950, 9 CCH, Unemployment Ins. Rep. (Wash.) par. 1901.11.[3]

A reading of the record in the instant case indicates that relator worked on his father's farm 8 hours per day. By his own statement he performed as much work as either his father or his brother in con-

---

to accept a type of work for which he is reasonably suited by experience and training, and for which there is some possibility of his obtaining in any area in which he is willing to work. * * *"

[3]The following cases hold an individual not unemployed and ineligible for benefits either because of self-employment or working for others on full-time basis: Commonwealth v. Montgomery (1956) 52 Sch. Leg. Rec. (Pa.) 135, 8 CCH, Unemployment Ins. Rep. (Pa.) par. 1901.618; Matter of Brown (1953) 281 App. Div. 935, 119 N. Y. S. (2d) 593; Hatch v. Employment Security Agency (1957) 79 Idaho 246, 313 P. (2d) 1067, 65 A. L. R. (2d) 1174.

nection with the operation of the farm. He was accordingly employed full-time but received no wages. He received board and room regularly of an undetermined value. It was therefore decided by the appeal tribunal and affirmed by the commissioner that relator, during the weeks for which he was paid benefits, was not entitled to them because he was not available for work as required by § 268.08, subd. 1(3).

■■■ This court has defined the term "available for work" in Swanson v. Minneapolis-Honeywell Regulator Co. 240 Minn. 449, 61 N. W. (2d) 526. Section 268.08, subd. 1(3), was construed in that case to mean that, unless the claimant is accessible or attainable for work when suitable work is offered at such hours as are customary in the type of employment to which he is suited, he is not available for work. This court has repeatedly said that the act is intended to benefit persons who are unemployed through no fault of their own and who are genuinely attached to the labor market. As to what constitutes availability for work when required by statute as a condition to a claimant's right to unemployment compensation, see 48 Am. Jur., Social Security, Unemployment Insurance, etc., §§ 34, 35.

This court in the Swanson case considered the meaning of the term "available for work," commenting (240 Minn. 452, 61 N. W. [2d] 529):

"* * * The statutes do not contemplate total availability under all circumstances since they provide that the work need not be accepted unless it is suitable and the work also may be refused if good cause exists. § 268.09, subd. 1(5)."

In Thompson v. Schraiber, 253 Minn. 46, 48, 90 N. W. (2d) 915, 916, this court reviewed the Swanson case, saying:

"* * * We held that in order to fall within the statutory requirements of availability for work an employee must be unequivocally exposed to the labor market * * *." (Citing Leclerc v. Administrator, 137 Conn. 438, 78 A. [2d] 550.)

Although trained in the army as a radio service repairman, relator had never performed that type of work and had a feeling that he was not qualified for it. Before going into service, relator undoubtedly

had some experience in farming since the family farm consisted of 206 acres and was well stocked with approximately 50 head of dairy cattle, about 20 of which were cows. Although the relator twice refused referrals for work at the Franklin Mfg. Co. of St. Cloud, it does not appear that he could not have performed the assembly work which that job required. The record would indicate that it constituted suitable work which he did not have good cause to refuse.

The rule is that availability requirements are satisfied when an individual is willing, able, and ready to accept suitable work which he does not have good cause to refuse, that is, when he is genuinely attached to the labor market. Reger v. Administrator, 132 Conn. 647, 46 A. (2d) 844.

The Unemployment Compensation Act does not contemplate that a job must seek out the individual and coax him to work, but presupposes some effort on his part to secure work. The question, therefore, before us on this appeal is whether relator was genuinely attached to the labor market. See, Department of Ind. Relations v. Mann, 35 Ala. App. 505, 50 So. (2d) 780, petition for certiorari stricken, 255 Ala. 201, 50 So. (2d) 786; Fleiszig v. Board of Review, 412 Ill. 49, 104 N. E. (2d) 818.

█ It was held in Brilhart Unemployment Comp. Case, 159 Pa. Super. 567, 49 A. (2d) 260, that refusal of referral of work weakened the presumption of availability erected by registration for work. Where there is lack of interest in employment, such condition tends to establish unavailability. See, Pa. Bd. of Rev. Dec. No. B-12569, July 7, 1947, 8 CCH, Unemployment Ins. Rep. (Pa.) par. 1950.265; R. I. Bd. of Rev. Dec. No. 95, June 2, 1949, Benefit Series, U.C.I.S., Vol. 12, No. 11, p. 154 (case No. 13890).

█ In Capra v. Carpenter Paper Co. 258 Minn. 456, 466, 104 N. W. (2d) 532, 539, this court stated:

"* * * The statute is clear with respect to what must be done by the applicant for unemployment compensation—he must register for work, file a claim for benefits, be able to work, be available for work, be unemployed for a waiting period of 1 week during which he is otherwise eligible, and continue to report to the unemployment office

each week. There is no requirement that he must be engaged in a search for work for any given number of hours each day or week or that he must contact a certain number of employers to prove that he is engaged in a search for work."

■ Relator relies on Di Re v. Central Livestock Order Buying Co. 246 Minn. 279, 74 N. W. (2d) 518, in support of his contentions. In that case the evidence permitted a finding that claimant did not refuse the referral of work because of the hours but because the work would not utilize his recent employment experience or his past 18 years of bookkeeping, accounting, and supervisory experience and offered poor opportunity for advancement. The commissioner, therefore, determined that the position offered was substantially different and was not suitable and this court did not question that finding because of the well-established rule that where there is evidence tending to support the findings of the commissioner they will not be disturbed on review. As we pointed out in that case, Minn. St. 268.09, subd. 1(5), vests the commissioner with wide discretion in determining whether offered work is "suitable" for a particular individual, but that section also specifies certain standards to which the commissioner must conform in making his determination. The procedure to be followed is quite fully set forth in Berthiaume v. Christgau, 218 Minn. 65, 70, 15 N. W. (2d) 115, 118. This court remanded the Di Re case to the commissioner to take further evidence on the claimant's prospects of obtaining local work in his customary occupation within a reasonable time in order to determine whether the work he refused was suitable.

■ Relator indicated to a representative of the department at the St. Cloud office that he desired work as a hardware sales clerk. The assembly work which he was offered and refused required no prior experience. The record discloses that relator made no effort to look for work of his own choice. Even though he resided in a rural area 30 miles from Willmar and 52 miles from St. Cloud, he made only one application for employment pursuant to a referral by the St. Cloud office. He did not seek work otherwise until benefits were suspended, and he did not become employed until September 14, 1959. Relator

is not entitled to the benefits paid him unless he was "available for work" under the provisions of § 268.08, subd. 1(3). Clearly the question of whether an individual is "employed" is allied with the question of his availability.

■ Relator claims that the entire procedure in the instant case constitutes a denial of due process. The record clearly indicates that relator was given every opportunity to be heard. Juster Bros. Inc. v. Christgau, 214 Minn. 108, 7 N. W. (2d) 501; State ex rel. Ging v. Board of Education, 213 Minn. 550, 7 N. W. (2d) 544. There is nothing in the record to indicate that the hearings were not conducted in accordance with the provisions of the employment security laws and regulations.

The rule is well established in this state that the findings of the commissioner will be viewed in the most favorable light upon review and that where there is evidence reasonably tending to sustain them such findings will not be disturbed. Hamlin v. The Coolerator Co. 227 Minn. 437, 35 N. W. (2d) 616; Chellson v. State Div. of Employment & Security, 214 Minn. 332, 8 N. W. (2d) 42; Honeymead Products Co. v. Christgau, 234 Minn. 108, 47 N. W. (2d) 754.

Relator's contention that he was denied due process of law is, upon the record before us, without merit.

After careful consideration of the entire record we reach the conclusion that there is ample evidence to support the commissioner's decision that claimant was employed on a full-time basis and that he was not available for work and, therefore, was not eligible to receive benefits.

Affirmed.