**HONEYWELL, INC., Relator,**

v.

**Debra HOYHTYA, Commissioner of Jobs & Training, Respondents.**

No. C6-86-1554.

Court of Appeals of Minnesota.

Feb. 17, 1987.

Robert J. Mabel, Minneapolis, for relator.

William Godbout, Jr., Roseville, for Debra Hoyhtya.

Hubert H. Humphrey, III, Atty. Gen., Donald E. Notvik, Sp. Asst. Atty. Gen., St. Paul, for Commissioner of Jobs & Training.

Heard, considered and decided by WOZNIAK, P.J., and LESLIE and RANDALL, JJ.

## OPINION

RANDALL, Judge.

After relator Honeywell, Inc. reduced respondent Hoyhtya's hours from full-time to part-time pursuant to Hoyhtya's request, the amount of work available for the part-time position began to decrease substantially. Finally, when there was no more work available, Hoyhtya applied for unemployment compensation. The Commissioner of Jobs & Training determined that Hoyhtya's reduction to part-time work constituted a transfer in positions, rather than a voluntary quit, and therefore charged Honeywell's experience rating account for all wage credits earned by Hoyhtya, both before and after her reduction to part-time work. The Commissioner also found that Hoyhtya was available for work and actively seeking work. We reverse as to the finding of the transfer and hold that Hoyhtya's request for a reduction in hours constituted a voluntary quit; however, since Hoyhtya subsequently cleared her disqualification by her part-time employment, we find that Honeywell's account

should be charged for wage credits earned by Hoyhtya after the date of the voluntary quit. We affirm the Commissioner's finding that Hoyhtya was available for work and actively seeking work.

## FACTS

Debra Hoyhtya began working for Honeywell in February 1981 as a writer/producer of internal training and marketing films, video tapes and slide shows. She began under an internship program while still in college, and was then hired on as a full-time writer/producer.

In September 1985, Hoyhtya requested that her hours be reduced, so she could spend more time with her family. Honeywell responded by transfering her to a part-time overload writer/producer position, beginning September 15, 1985. At the time of the transfer, an "Employee Change Notice" was completed, which stated in part: "Reason for Change and Remarks. Voluntary Termination—Effective 09–15–85 * * * Terminate as full-time regular employee going to overload status." On another form, entitled "Termination-Leave-Transfer Report", Honeywell characterized Hoyhtya's reason for leaving as "Voluntary Resignation".

Hoyhtya averaged fifteen to twenty hours per week in the part-time position; however, in January 1986, her hours began to decrease substantially. Consequently, in February, Hoyhtya spoke with personnel from the overload department about doing secretarial work. When she learned that the pay for secretarial work was approximately one-half of her writer/producer salary, however, Hoyhtya indicated that she might not be willing to do that type of work on certain days of the week.

On February 18, 1986, Hoyhtya was informed that there would be no more writer/producer work for awhile, although it was expected that more work would be available in the future.

Hoyhtya filed for unemployment compensation and began looking for another job. At a hearing to determine her entitlement to unemployment compensation benefits, Hoyhtya testified that she had graduated with a B.A. in electronic journalism, had worked for Honeywell since graduation, and was looking for full-time work in her field. According to Hoyhtya, the unemployment compensation office had advised her to send out up to six resumes per week by mail until April 13; then she was told to make three in-person contacts per week. Hoyhtya introduced evidence that she had contacted the requisite number of employers, but testified that those employers had no work available and chose not to accept her resume. She also testified that she contacted the state Job Service and checked Honeywell's Job Circulator until February 1986. After February, she did not continue to check Honeywell's listings because she was not in the building anymore and had not previously seen any suitable listings.

A Department referee granted Hoyhtya unemployment compensation benefits, determining that she had voluntarily quit her job on September 15, 1985, when she had reduced her hours. However, the referee also found that Hoyhtya had subsequently cleared the disqualification by her part-time employment with Honeywell. Thus, the referee determined that benefits paid to Hoyhtya based upon wage credits earned prior to the date of the voluntary quit should not be charged to Honeywell's experience rating account, but that benefits based upon wage credits earned after that time should be charged to Honeywell's account. The referee also determined that Hoyhtya was "available" for work after her job with Honeywell ended.

On appeal, a Commissioner's representative modified the referee's decision, agreeing that Hoyhtya was "available" for work, but concluding that her reduction to part-time hours in September 1985 was a transfer, rather than a voluntary quit. Consequently, the representative concluded that Hoyhtya separated from employment on February 18, 1986, due to a lack of work, and that any benefits paid should be charged to Honeywell's account. Honeywell has appealed.

## ISSUES

1. Was Hoyhtya's reduction in hours a voluntary quit or a transfer to another position?

2. Did Hoyhtya actively seek work and remain available for work after she filed her claim for unemployment compensation benefits?

## ANALYSIS

### I.

*Voluntary Quit*

The Commissioner's decision that Hoyhtya did not voluntarily quit her full-time job runs counter to our recent decision in *Hogenson v. Brian Knox Builders*, 361 N.W.2d 163 (Minn.Ct.App.1985). There, we held that a request for a reduction in hours constitutes a voluntary termination of employment, and we follow that decision here.

The Commissioner's representative also noted, however, that even if Hoyhtya's reduction in hours were considered a voluntary quit (which we hold that it is), she would have cleared her disqualification by her subsequent part-time employment with Honeywell. We agree with this analysis, and conclude that Hoyhtya is entitled to receive unemployment compensation benefits, but that Honeywell's account should only be charged for those benefits based upon wage credits earned after September 15, 1985—the date of the voluntary quit.

### II.

*Work Availability*

The question of a claimant's availability for work hinges upon the facts of each claimant's situation. *Semanko v. Department of Employment Services*, 309 Minn. 425, 428, 244 N.W.2d 663, 665 (Minn.1976). Where the Commissioner's representative has made a determination regarding a claimant's availability for work, that determination should not be disturbed if it is reasonably supported by the evidence. *Id.*

Here, the evidence supports the representative's determination that Hoyhtya was available for work. Hoyhtya testified that she made contacts both in person and by telephone, and attempted to leave resumes with the employers she contacted. While Honeywell claims that Hoyhtya narrowed her search too severely, the evidence indicates that Hoyhtya has a B.A. in electronic journalism, and made application to businesses in that field. Honeywell's argument that Hoyhtya's talents and experience "would also be applicable in the advertising community as well as within corporations which could utilize her writing talents, and educational institutions which have departments in the audio-video area" was not raised below.

## DECISION

Hoyhtya's request to have her hours reduced to part-time constituted a voluntary quit, rather than a transfer to another position. Honeywell's account may only be charged for those benefits earned after the date of that voluntary quit. Hoyhtya remained available for work, and was actively seeking work.

Affirmed in part and reversed in part.