Juana FLORES, Respondent,

v.

DEPARTMENT OF JOBS AND TRAINING, Petitioner.

No. C2–86–742.

Supreme Court of Minnesota.

Aug. 28, 1987.

Donald E. Notvik, Special Asst. Atty. Gen., St. Paul, for petitioner.

Martin A. Diaz, Minneapolis, for respondent.

1. Juana Flores has, we understand, since become a permanent resident of the United States.

2. Flores was a member of the class of aliens protected from deportation by an injunction issued in *Silva v. Levi*, Civ. No. 76C4268 (N.D.Ill., Nov. 1, 1981), a class action brought by aliens claiming that the supply of visas available for

**OPINION**

COYNE, Justice.

On the petition of the Commissioner of the Department of Jobs and Training (Department) we review a decision of the court of appeals awarding unemployment compensation to an alien. *Flores v. Department of Jobs and Training*, 393 N.W.2d 231, 234 (Minn.App.1986). The court of appeals held that an alien otherwise eligible for unemployment compensation is not disqualified by the expiration of her employment authorization. We affirm.

Juana Flores is a Mexican national who came to the United States around 1970 and became a Minnesota resident in 1979.[1] Initially, Flores applied for permanent residence through her daughter, who was born in the United States, but the immigration laws changed and Flores became vulnerable to deportation. In 1979, however, Flores was notified that the Immigration and Naturalization Service (INS) would take no action to deport her until further notice.[2] The notice stated, "Your employment in the United States is authorized." On February 20, 1982, the INS notified Flores that she was subject to deportation or voluntary departure within 30 days and that her authorization for employment would expire on termination of her voluntary departure status. The INS subsequently granted nine extensions carrying forward Flores' voluntary departure date and her employment authorization through November 9, 1984.

On May 2, 1984 the INS had approved Flores' visa petition for preference classification as a relative immigrant, and on November 26, 1984, by appointment, Flores presented herself at the United States consulate at Mexico City.[3] Unfortunately, the

issuance to members of the plaintiff class had been depleted by the improper granting of visas to a different class of aliens. The injunction was dissolved as of November 1, 1981.

3. To enter the country for lawful permanent residence as an immigrant, an alien must have a valid passport and an immigration visa. Com-

consul's representative found grounds for excluding Flores and declined to grant Flores an immigrant visa. Flores was, however, paroled into the United States on humanitarian grounds.[4]

When Flores was readmitted to the United States on January 4, 1985, she returned to Minnesota and to her job at Amfac Hotel where she had worked as a cook during her 1984 base period until her departure for Mexico City. Within a week after her return, Flores was laid off. She applied for and was awarded unemployment compensation through February 9, 1985, when she was rehired by Amfac Hotel. Flores worked there as a cook until July 4, 1985, when she was once again laid off. Her unemployment compensation claim file was reopened, but her claim was denied and the Department demanded restitution of the benefits paid during the period in January and February that Flores was out of work.

Under the Minnesota economic security law an individual is eligible to receive unemployment compensation only if the individual was able to work and was available for work, and was actively seeking work.[5] In compliance with the requirements of the Federal Unemployment Tax Act (FUTA)[6], special provisions governing the eligibility of aliens have been incorporated into the Minnesota economic security law:

(a) Benefits shall not be paid on the basis of services performed by an alien unless such alien is an individual who was lawfully admitted for permanent residence at the time such services were performed, was lawfully present for the purposes of performing such services, or was permanently residing in the United States under color of law at the time such services were performed (including an alien who was lawfully present in the United States as a result of the application of the provision of section 203(a)(7) or section 212(d)(5) of the Immigration and Nationality Act).

(b) Any data or information required of individuals applying for benefits to determine whether benefits are not payable to them because of their alien status shall be uniformly required from all applicants for benefits.

(c) In the case of an individual whose application for benefits would otherwise be approved, no determination that benefits to such individual are not payable because of alien status shall be made

---

ment, *How to Immigrate to the United States: A Practical Guide for the Attorney,* 14 San Diego L.Rev. 193, 197–98 (1976). To obtain an immigrant visa, an alien must apply at the U.S. consulate in his home country. 8 U.S.C. §§ 1101(a)(16), 1181(a) (1982). The alien must demonstrate to the consular officer that he is not excludable under qualitative and quantitative restrictions. Comment, *supra,* at 198.

**4.** Parole pursuant to 8 U.S.C. § 1182(d)(5) is not regarded as admission for permanent residence. Although the statute indicates that the term of parole is indefinite, "when the purposes of such parole shall, in the opinion of the Attorney General, have been served the alien shall forthwith return or be returned to the custody from which he was paroled * * *." Flores' permit states that she is paroled to February 3, 1985.

**5.** Conditions of eligibility for benefits are set out at Minn.Stat. § 268.08, subd. 1 (1986):

An individual shall be eligible to receive benefits with respect to any week of unemployment only if the commissioner finds that the individual:

(1) has registered for work at and thereafter has continued to report to an employment office, or agent of the office, in accordance with rules the commissioner may adopt; * * *

(2) has made a claim for benefits in accordance with rules as the commissioner may adopt;

(3) was able to work and was available for work, and was actively seeking work. * * *

An individual is deemed unavailable for work with respect to any week which occurs in a period when the individual is a full-time student in attendance at, or on vacation from an established school, college or university unless a majority of the credit weeks earned in the base period were for services performed during weeks in which the student was attending school as a full-time student.

An individual serving as a juror shall be considered as available for work and actively seeking work on each day the individual is on jury duty; and

(4) has been unemployed for a waiting period of one week during which the individual is otherwise eligible for benefits under sections 268.03 to 268.24. * * *

**6.** 26 U.S.C. § 3304(a)(14)(A) (1982).

except upon a preponderance of the evidence.

Minn.Stat. § 268.08, subd. 8 (1986).

■ The Department concedes that Flores was permanently residing in the United States under color of law at the time she performed the services on which her benefit claim is based and that her employment was authorized. The Department also concedes that she was permanently residing in the United States under color of law while unemployed. Flores entered the country legally as a parolee and although her parole expired and her request for an extension was unanswered during her claim period, it is apparent from the record that the INS had notice of her presence but took no steps to deport her. *Compare Holley v. Lavine,* 553 F.2d 845, 849 (2d Cir.1977), *cert. denied,* 435 U.S. 947, 98 S.Ct. 1532, 55 L.Ed.2d 545 (1978); *Cruz v. Commissioner of Public Welfare,* 395 Mass. 107, 478 N.E.2d 1262 (1985); *Rubio v. Employment Division,* 66 Or.App. 525, 674 P.2d 1201 (1984) (test "is not whether claimant was legally entitled to work but whether he was permanently residing in this country under color of law"). Nevertheless, the Department declared Flores ineligible for unemployment benefits on the ground that she was "unavailable for work" because on her readmission to the United States as a parolee she did not have work authorization. In support of its position the Department relies on Minn. Rule 3305.0500, subp. 3: "A claimant who is an alien must present proof that he is authorized under federal law to work in the United States to be available for work." Although we agree with the Department that eligibility under section 268.08, subd. 8a is merely a threshold requirement which aliens must meet and that aliens, like all other claimants, must be able to work, be available for work, and be actively seeking work as required under section 268.08, subd. 1(3), we regard a blanket rule requiring proof of work authorization an unwarranted extension of the availability requirement.[7]

The legislature has prefaced the economic security law with a declaration of public policy in which a two-fold purpose is expressed: to encourage employers to provide more stable employment and to accumulate funds to be used for the benefit of persons unemployed through no fault of their own. Minn.Stat. § 268.03 (1986). In keeping with the tenor of that declaration this court has held that an express provision for disqualification is effective only if the facts come within the meaning of the words used by the legislature. *Nordling v. Ford Motor Co.,* 231 Minn. 68, 76, 42 N.W.2d 576, 581–82 (1950). For the same reason we are of the opinion that the eligibility requirements may not be amplified beyond the meaning of the words used by the legislature.

■ While it is generally impossible to draw a clear line between availability and unavailability, this court has repeatedly said that the act is intended to benefit people who are unemployed through no fault of their own and who are "genuinely attached to the labor market." *Olson v. Starkey,* 259 Minn. 364, 371, 107 N.W.2d 386, 391 (1961). The basic purpose of the availability requirement is to test the claimant's attachment to the labor market. *Swanson v. Minneapolis-Honeywell Regulator Co.,* 240 Minn. 449, 61 N.W.2d 526 (1953). Thus, a claimant who imposes unduly restrictive conditions on the work he will accept has no genuine attachment to the labor market and is not available within the meaning of the act. *Id.* at 456, 61 N.W.2d at 531; *Thompson v. Schraiber,* 253 Minn. 46, 90 N.W.2d 915 (1958). Whether a student or a self-employed person is available may turn on the claimant's willingness to accept an offer of employment. *Goodman v. Minnesota Department of Employment Services,* 312 Minn. 551, 255 N.W.2d 222 (1977); *Hansen v. Continental Can Co.,* 301 Minn. 185, 221 N.W.2d 670 (1974); *Olson v. Starkey,* 259

---

**7.** On November 6, 1986, subsequent to issuance of the court of appeals decision in this matter, the Immigration Reform and Control Act of 1986, Pub.L. No. 99–603 (1986) became law. We address the propriety of Rule 3305.0500, subp. 3 under the law existing during the period for which Flores sought unemployment benefits.

Minn. 364, 107 N.W.2d 386 (1961). Availability however, requires more than just willingness to accept suitable work. The claimant must be available in the sense that he is in a position to accept work. Thus, one who cannot accept an offer of employment because he is incarcerated in jail is not available. *Grushus v. Minnesota Mining and Manufacturing Company,* 257 Minn. 171, 100 N.W.2d 516 (1960).

■ That Flores is genuinely attached to the labor market is evident from the record. From 1979, when Flores came to Minnesota, until November of 1984 when she went to Mexico City for her immigration visa interview, the INS advised her that her "employment in the United States is authorized." When she returned to Minnesota as a parolee in January of 1985, she returned to the same job she had held when the INS had said her employment was authorized. Following a month long lay-off, Flores again returned to the same job and worked there for about five months before she was again laid off. From a practical standpoint it is difficult to say that Flores, who demonstrated her attachment to the labor market by returning to work when summoned by her employer and by looking for work as a "cook, daycare, babysitting, whatever" when laid off, was not "available for work," even when she did not have work authorization. While it is true that Flores was not legally entitled to accept employment after January 4, 1985[8], and that her acceptance exposed her to deportation, 8 U.S.C. § 1251(a)(9) (1982), 8 C.F.R. § 214.1(e) (1987), deportation is not a criminal proceeding and has never been held to be punishment. *Carlson v. Landon,* 342 U.S. 524, 537, 72 S.Ct. 525, 533, 96 L.Ed. 547 (1952). Furthermore, until very recently, nothing in the Immigra-

tion and Naturalization Act precluded employers from employing illegal aliens.[9] To the contrary, the only reference to employers is the somewhat peripheral concern with the employment of illegal entrants expressed in 8 U.S.C. § 1324, which makes it a felony to harbor illegal entrants, but expressly excludes "employment (including the usual and normal practices incident to employment)" from the definition of "harboring." 8 U.S.C. § 1324 (1982). *See also DeCanas v. Bica,* 424 U.S. 351, 360, 96 S.Ct. 933, 939, 47 L.Ed.2d 43 (1976).

We are not unaware that the United States Department of Labor, which had previously considered the eligibility of an alien authorized to work when the credits were earned but whose authorization expired before the claim was made a matter to be resolved under state law, UIPL No. 15–78, changed its position some months after Flores' claim was reopened. In an interpretive letter, UIPL No. 1–86, dated October 28, 1985, the DOL declared that "[i]n addition to meeting other state availability requirements, an alien must be legally authorized to work in the United States to be considered 'available for work.'" Although the letter purports to interpret 26 U.S.C. § 3304(a)(14)(A), we note that section 3304 does not condition federal approval of a state unemployment compensation statute on the inclusion of availability as a requisite for eligibility. Moreover, while an interpretive letter such as UIPL No. 1–86 is entitled to deference, it is not controlling. *Watkins v. Cantrell,* 736 F.2d 933, 943–44 (4th Cir.1984); *Rivera v. Becerra,* 714 F.2d 887, 889 (9th Cir.1983), *cert. denied,* 465 U.S. 1099, 104 S.Ct. 1591, 80 L.Ed.2d 124 (1984). *See also Swenson v. Emerson Electric Co.,* 374 N.W.2d 690, 701–02 (Minn.1985), *cert. denied,* —— U.S.

---

**8.** That the departure record form I–94 given to Flores at Eagle Pass, Texas, on her reentry into the United States on January 4, 1985 as a parolee does not include work authorization apparently does not indicate a refusal of work authorization. Although some aliens paroled into the United States need not request work authorization, an alien paroled into the United States temporarily for the reasons specified in 8 U.S.C.A. § 1182(d)(5), as was Flores, must apply for work authorization to the district director in

whose district the alien resides. 8 C.F.R. § 109.1(b)(4) (1987). The record does not indicate that Flores requested work authorization from the director of the St. Paul office of the INS.

**9.** After June 1, 1987, an employer who hires an alien without employment authorization is subject to criminal sanctions. Pub.L. No. 99–603, § 101, 8 U.S.C.A. § 1324a (West Supp.1987).

——, 106 S.Ct. 1998, 90 L.Ed.2d 678 (1986). In the light of our established view that the purpose of the availability requirement is to test the claimant's attachment to the labor market, we are disinclined to accord the DOL's altered interpretation retroactive effect by engrafting onto our accepted definition of availability additional eligibility requirements.

 Although the proof of INS work authorization which the DOL recommends and Rule 3305.0500, subp. 3, requires of aliens is certainly evidence of availability, it is not the sine qua non of attachment to the labor market—at least as long as the law neither prohibits nor obstructs an offer of employment to or the hiring of an alien who does not have work authorization. While it is clear that the legislature has conferred on the Department of Jobs and Training rule making authority in furtherance of its administrative duties, the Department may not adopt a rule which conflicts or is inconsistent with the statute. *Sellner Manufacturing Company, Inc. v. Commissioner of Taxation*, 295 Minn. 71, 74, 202 N.W.2d 886, 888 (1972); *Dumont v. Commissioner of Taxation*, 278 Minn. 312, 315–16, 154 N.W.2d 196, 199 (1967). Because we are of the opinion that the statutory requirement of availability is satisfied when a claimant demonstrates that he is genuinely attached to the labor market by showing that the individual making the claim is willing to accept an offer of suitable work, that he imposes no unduly restrictive conditions on the work he will accept, that he is in a position to accept work, and that the law does not prohibit or obstruct an offer of employment to or the hiring of that individual, we hold that Rule 3305.0500, which imposes on aliens requirements in addition to those required by the statute is inconsistent with the statute.

We hold, therefore, that an alien, such as Flores, who is otherwise eligible under the provisions of Minn.Stat. § 268.08 (1986) to receive unemployment benefits is not unavailable for work within the meaning of subdivision 1(3) of that section because the alien is not authorized by the INS to work in the United States where the alien was authorized to work when the wage credits were earned and where the alien is genuinely attached to the labor market.

Affirmed.